Application of the FIRST NATIONAL CITY BANK OF NEW YORK, French American Banking Corporation and The Royal Bank of Canada, Petitioners-Appellants,

to quash three subpoenas duces tecum dated March 15, 1960,

v.

Manuel ARISTEGUIETA, Consul General of the Republic of Venezuela, on behalf of the Republic of Venezuela, Respondent-Appellee.

Application of Silvio GUTIERREZ, Petitioner-Appellant,

to quash a subpoena duces tecum dated April 18, 1960,

v.

Manuel ARISTEGUIETA, Consul General of the Republic of Venezuela, on behalf of the Republic of Venezuela, Respondent-Appellee.

Application of Napoleon DUPOUY, Petitioner-Appellant,

to quash two subpoenas duces tecum dated March 15, 1960,

v.

Manuel ARISTEGUIETA, Consul General of the Republic of Venezuela, on behalf of the Republic of Venezuela, Respondent-Appellee.

Nos. 374, 375, 376, Dockets 26325, 26326, 26327.

United States Court of Appeals Second Circuit.

Argued June 16, 1960.

Decided Dec. 30, 1960.

John A. Wilson, New York City (Shearman & Sterling & Wright, New York City, on the brief; Gilson B. Gray, III, New York City, of counsel), for petitioner-appellant the First Nat. City Bank of New York.

Coudert Brothers, New York City (Alexis C. Coudert, New York City, of counsel), for petitioner-appellant, French American Banking Corp.

Sage, Gray, Todd & Sims, New York City (Melber Chambers, New York City, of counsel), for petitioner-appellant, the Royal Bank of Canada.

Benjamin Busch, New York City (Katz & Sommerich, New York City, on the brief; Otto C. Sommerich and Albert M. Herrmann, New York City, of counsel), for petitioner-appellant, Silvio Gutierrez.

Charles Pickett, New York City (Chadbourne, Parke, Whiteside & Wolff, New York City, on the brief; Alan B. Lerner, New York City, of counsel), for petitioner-appellant, Napoleon Dupouy.

David C. Acheson, Washington, D. C. (Dean Acheson, Howard C. Westwood and Sidney S. Sachs, Washington, D. C., John Logan O'Donnell, New York City, on the brief; Covington & Burling, and Sachs & Jacobs, Washington, D. C., Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, of counsel), for respondent-appellee, Manuel Aristeguieta, Consul General of the Republic of Venezuela.

Malcolm Richard Wilkey, Asst. Atty. Gen., Beatrice Rosenberg, Joseph J. Cella, Jerome M. Feit, Attys., Dept. of Justice, Washington, D. C., on the brief for the United States, as amicus curiae.

Before WATERMAN, MOORE and HAMLIN,* Circuit Judges.

MOORE, Circuit Judge.

The appellants are three banks, The First National City Bank of New York (City Bank), French American Bank-ing Corporation (French American), the Royal Bank of Canada, and Silvio Gutierrez, a depositor with Chemical Bank New York Trust Company, and Napoleon Dupouy, a depositor in City Bank and French American. Appellants appeal from an order which denied appellants' motions to quash subpoenas *duces tecum* issued by the Clerk of the District Court for the Southern District of New York. Previously, United States District Court Judge Mathes of the Southern District of California, sitting as an extradition magistrate in the Southern District of Florida, had granted appellee "permission to resort to the deposition procedure provided in Rules 26 and 45 and related provisions of the Federal Rules of Civil Procedure, including, without limitations, procedure for subpoenas *duces tecum*, to secure evidence from any appropriate officials of First National City Bank of New York, of French American Banking Corporation, and Royal Bank of Canada, all in New York City."

Involved is an international extradition proceeding initiated by Manuel Aristeguieta, Consul General of the Republic of Venezuela, on behalf of appellee, the Republic of Venezuela (Venezuela), in which the return to Venezuela of Marcos Perez Jimenez, a former president of Venezuela, now in the State of Florida, is sought. The complaint filed by Venezuela in the Southern District of Florida charges Jimenez with a number of crimes alleged to have been committed in Venezuela, which are extraditable under the Treaty of Extradition between the United States and Venezuela (43 Stat. 1698). The crimes include four murders, the unlawful abstraction and misappropriation to his own personal use of large sums of money and the illegal receipt of various commissions, all to his illicit enrichment at the expense of the Republic of Venezuela.

More specifically, the complaint in substance alleges that the Attorney-General of Venezuela filed a bill of charges

* Of the Ninth Circuit, sitting by designation.

supported by voluminous documentary evidence in the Federal Court of Venezuela, that the Federal Court issued its warrant for Jimenez' arrest, that extradition documents legally authenticated have been filed here and incorporated therein by reference and that justification for extradition has been established as a matter of fact and law. Hearings, which have been conducted for some time before Judge Mathes, are still pending. During the course of the hearings, counsel for Venezuela served upon certain of the banks notices for taking depositions in New York together with subpoenas based thereon. The notices upon motion were vacated by order (Judge Choate) in Florida. This order in turn was vacated (also by Judge Choate) "in so far as it relates to the establishment of special rules governing procedure in the above styled case."

Thereafter, subpoenas were served in New York, returnable in Miama, Florida, requiring the banks to produce certain specified records. The banks responded by moving to quash; the motions were denied and thereafter an appeal was taken by the banks and others (including appellant depositors) to the United States Court of Appeals for the Fifth Circuit. The appellants there argued that subpoenas in an extradition proceeding could not properly be issued on behalf of the demanding country and, alternatively, that the particular subpoenas were invalid because they purported to extend the Court's process beyond 100 miles from the Court House in Miami, see Fed.Rules Civ.Proc. 45(e) (1). The United States filed a brief *amicus curiae* (as has been done in this court) contending that the power of an extradition magistrate includes nation-wide compulsory process.

In the interest of expedition the Court of Appeals for the Fifth Circuit handed down a *per curiam* opinion, Chief Judge Rives dissenting, in which the grounds of decision were not stated. The court simply concluded that the order of the District Court should be reversed and the subpoenas quashed. Aristequieta v. Jimenez, 5 Cir., 1960, 274 F.2d 206 (petition for certiorari docketed April 28, 1960). After complying with this mandate, Judge Mathes by order permitted Venezuela to avail itself of the deposition and subpoena procedure under the Federal Rules of Civil Procedure. Subpoenas have been issued in the Southern District of New York and the banks again have moved to quash. From Chief Judge Ryan's opinion denying the motions, appellants appeal.

The foundation for international extradition lies within a short statutory framework, 18 U.S.C.A. §§ 3184–3195, and whatever treaty is applicable to the foreign country seeking delivery. The treaty with Venezuela, supra (a fairly standardized version of comparable agreements with other nations) provides that upon requisition a person charged with any of the crimes specified in Article II shall be surrendered by the country of asylum.

The purpose of the Treaty is "to facilitate the course of punitive justice * * *; to prevent the impunity which would result from the escape of guilty persons and of their asylum in the territory of one or the other nation," and to provide for the extradition of the accused as well as the sentenced. The method agreed upon was "to deliver up to justice, by means of requisition duly made as herein provided, any person who may be charged with or may have been convicted of any of the crimes committed within the jurisdiction of one of the Contracting Parties and specified in Article II of this Convention, while said person actually was within such jurisdiction when the crime was committed, and who shall seek asylum or who shall be found within the territories of the other." To assure each contracting country of comparable criminal standards the surrender was to be made "only upon such evidence of guilt as, according to the laws of the country in which the fugitive or accused shall be found, would justify his detention and commitment for trial if the crime or offense had been committed there" (Article I).

Section 3184, Title 18 U.S.C., then empowers "any justice or judge of the United States, or any commissioner authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State" in whose jurisdiction the fugitive is found, to conduct (after apprehension and appearance) a hearing "to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty * * * he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State * * *."

Neither statutes nor decided cases furnish satisfactory guides as to procedures for obtaining proof upon extradition proceedings. However, the courts have compared these proceedings with

"preliminary examinations which take place every day in this country before an examining or committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused, either by imprisonment or under bail, to ultimately answer to an indictment, or other proceeding, in which he shall be finally tried upon the charge made against him." Benson v. McMahon, 1888, 127 U.S. 457, 463, 8 S.Ct. 1240, 1243, 32 L.Ed. 234.

Adhering to this analogy, the question, thus, is whether probable cause has been established to suppose the fugitive guilty, Glucksman v. Henkel, 1911, 221 U.S. 508, 512, 31 S.Ct. 704, 55 L.Ed. 830; cf. Rule 5(c) of the Federal Rules of Criminal Procedure, 18 U.S.C., i. e., a *prima facie* case, Charlton v. Kelly, 1913, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274.

It was early recognized that upon an extradition hearing the evidence necessary to make out a *prima facie* case would be located in the country where the crime was committed and that the object of extradition would be defeated if the demanding country were put to the onerous task of transporting witnesses in person to the United States (Bingham v. Bradley, 1916, 241 U.S. 511, 517, 36 S.Ct. 634, 60 L.Ed. 1136). Hence, 18 U.S.C. § 3190 permits "depositions, warrants, or other papers or copies thereof" offered by the demanding government to be admitted in evidence if properly authenticated and certified that such evidence would be admissible in a like proceeding in the demanding country. The *ex parte* advantages of Section 3190 are not open to a defendant (In re Luis Oteiza y Cortes, 1890, 136 U.S. 330, 10 S.Ct. 1031, 34 L.Ed. 464), but he may offer limited evidence, admissible under recognized standards, to explain elements in the case against him (Charlton v. Kelly, supra). Moreover, Section 3191 provides, as to an indigent fugitive, where "there are witnesses whose evidence is material to his defense" and without whom "he cannot safely go to trial," the magistrate "may order that such witnesses be subpenaed" and the costs incurred and the fees of the witnesses "shall be paid in the same manner as in the case of witnesses subpenaed in behalf of the United States."

Finally, if the magistrate finds the evidence insufficient, he may discharge the defendant although the demanding country may later institute a second proceeding (Collins v. Loisel, 1923, 262 U.S. 426, 43 S.Ct. 618, 67 L.Ed. 1062). If he finds probable cause established, he may bind over the defendant to the Secretary of State, who may, in his discretion, order the surrender (18 U.S.C. § 3186).

■ First arises the question as to this court's appellate jurisdiction. Normally subpoena orders are interlocutory in nature and thus not appealable until the conclusion of the entire proceeding (Cobbledick v. United States, 1940, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783). However, the concept of finality is not inflexible. Because of the unicity of extradition, *viz.*, the magistrate's determination is not passed upon by an appellate court but only by the Secretary

of State,[1] appellants' contentions will never be reviewed if not now. A non-party witness, of course, generally cannot take part in the ultimate appeal of any case (Alexander v. United States, 1906, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686), but at least the precedential effect of an adverse district court ruling may be arrested at that time. In any event, the self-contained character of extradition suffices to render orders refusing to quash subpoenas issued in aid of the demanding country analogous to those orders which are ancillary to an administrative proceeding and therefore appealable.[2] See Ellis v. Interstate Commerce Commission, 1915, 237 U.S. 434, 35 S.Ct. 645, 59 L.Ed. 1036.

The interrelated issues raised by the parties to this appeal may be summarized as follows:

(1) The banks contend that 18 U.S.C. § 3190, which authorizes the admission in evidence of depositions and other papers certified abroad, is the exclusive evidentiary vehicle for the demanding country. They maintain that the basic principle and purpose of extradition presupposes that the demanding country must collect, in documentary form, all of its evidence at home and come to the country of asylum armed with a *prima facie* case. In support of the contrary position, Venezuela cites Article XI of the Treaty which provides for submitting to the asylum State the warrant of arrest in the country where the crime was committed and the depositions upon which such warrant may have been issued, "with such other evidence or proof as may be deemed competent in the case." Venezuela contends that this refers to evidence in addition to that which was acted on in the demanding country and includes evidence which may be found in the United States. A contrary interpretation, it is argued, would frustrate the purpose of the Treaty by encouraging fugitives to remove and conceal here evidence of culpability. As additional authority for this position are a number of cases where evidence obtained in the United States was admitted at the extradition hearing. See, e. g., McNamara v. Henkel, 1913, 226 U.S. 520, 33 S.Ct. 146, 57 L.Ed. 330; Argento v. Horn, 6 Cir., 1957, 241 F.2d 258, certiorari denied 355 U.S. 818, 78 S.Ct. 23, 2 L.Ed. 2d 35; In re Henrich, C.C.S.D.N.Y. 1867, 11 Fed.Cas. p. 1143, No. 6,369. The opinions in these cases, however, devote little discussion to the subject and the issue here raised has never been explicitly adjudicated.

(2) Conceding, in the alternative, that possibly witnesses in the United States may testify on behalf of the demanding country, the banks next argue that civil discovery cannot be availed of and that attendance cannot be compelled through use of a subpoena since there is nothing in the extradition treaties or statutes that would authorize the issuance of subpoenas at the behest of the demanding country. They assert that extradition is a nonjudicial proceeding conducted before a magistrate, and is not a proceeding within the jurisdiction of a United States District Court or of any Court. Thus, they claim, extradition is neither a "suit of a civil nature" to which the Federal Rules of Civil Procedure would apply, nor a judicial proceeding to which any inherent power of a court would attach. Venezuela, on the other hand, contends that an extradition hearing has many of the attributes of a judicial proceeding; that the extradition magistrate thus has the usual powers of a judge; and that since the treaties and statutes do not spell out the procedural details of extradition, the magistrate may invoke his inherent power to provide himself with appropriate in-

1. Limited collateral review, however, is available by way of habeas corpus, see Fernandez v. Phillips, 1925, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970, and most of the cases cited herein arose in that fashion.

2. In holding the order of Judge Mathes denying the motion to quash the original subpoenas to be appealable, the Court of Appeals for the Fifth Circuit was unanimous.

struments required for the performance of his duties. In support of its position that subpoena power exists, Venezuela cites 18 U.S.C. § 3191, which provides for payment of costs and fees of witnesses subpoenaed by indigent fugitives, and contends that this statute discloses a Congressional assumption that the power of subpoena at the behest of the demanding country resides in the extradition magistrate. The banks argue that this section, at most, permits the magistrate to subpoena only on behalf of the accused fugitive and clearly does not give the demanding country a similar privilege.

(3) Appellants next urge that even if the extradition magistrate has the power to subpoena witnesses for the demanding country, he has no authority to authorize the demanding country to avail itself of the deposition-subpoena procedures provided for in the Federal Rules of Civil Procedure. Pointing out that the Federal Rules of Criminal Procedure are specifically declared to be inapplicable to extradition proceedings and that the Civil Rules should not be available in a quasi-criminal proceeding, appellants contend that in the absence of statute there is no power in the federal courts or judges to authorize the taking of depositions. In addition, appellants assert that the basic principle of extradition militates against permitting the demanding country to invoke the judicial processes of the United States in order to "discover" evidence to be used at home. Venezuela, although admitting in its brief that "the Rules [Civil Procedure] are not mandatory in extradition," nevertheless takes the position that "Within his discretion under Article XI the extradition judge may do what a district judge may normally do, when no particular procedure is prescribed for the case—he may follow as a model, in exercising his discretion, the pattern provided by the Federal Rules of Civil Procedure."

(4) Appellant Dupouy, while not joining completely in the position taken by the banks,[3] argues that, in any event, the information sought under the subpoenas is not necessary to Venezuela's case.

Venezuela would thus vest the extradition magistrate with some inherent power, including the right to borrow from the Civil Rules, to fill a procedural vacuum in the extradition treaties and statutes. The ultimate issues posed for adjudication are thus (a) whether the extradition magistrate has the power to authorize the demanding country to use deposition-subpoena provisions as provided for in the Civil Rules, and (b) whether this case is appropriate for the exercise of such power.

Preliminarily, it may be noted that we are not called upon to approve of a situation where a court, in which the Federal Rules of Civil Procedure are not mandatory, has borrowed a relatively minor provision from these Rules. See Union National Bank of Wichita, Kan. v. Lamb, 1949, 337 U.S. 38, 69 S.Ct. 911, 93 L.Ed. 1190, where the Supreme Court followed Rule 6 in computing the running of time for a filing of a petition for certiorari, and Simon v. Commissioner of Internal Revenue, 2 Cir., 1949, 176 F.2d 230, where this court adopted Rule 6 to determine the timeliness of a petition to review a decision of the Tax Court. Nor are we faced with a situation where an extradition magistrate has filled in gaps in the extradition treaties and statutes by fashioning his own procedure in relation to minor and essentially collateral matters. See, for example, In re Ludwig, C.C.S.D.N.Y.1887, 32 F. 774, which relates to continuances and adjournments, and Wright v. Henkel, 1903, 190 U.S. 40, 23 S.Ct. 781, 47 L.Ed. 948, which concerns the power to admit the fugitive to bail pending the hearing. Even a hasty glance at the complex and interrelated issues and arguments raised by the parties to this appeal clearly re-

3. The other depositor-appellant, Gutierrez, joins in all the arguments. The standing of the depositors to challenge the subpoenas is not disputed.

veals that we are confronted with a basic procedural innovation having far reaching consequence in the field of international extradition.[4]

In this connection the recent Supreme Court decision of Miner v. Atlass, 1960, 363 U.S. 641, 80 S.Ct. 1300, 4 L.Ed.2d 1462, is significant. Holding invalid a District Court admiralty rule which authorized the taking of oral depositions for the purpose of discovery only, the Court stated:

"The problem then is one which peculiarly calls for exacting observance of the statutory procedures surrounding the rule-making powers of the Court, see 28 U.S.C. § 331, 28 U.S.C.A. § 331 (advisory function of Judicial Conference), 28 U.S.C. § 2073, 28 U.S.C.A. § 2073 (prior report of proposed rule to Congress), designed to insure that basic procedural innovations shall be introduced only after mature consideration of informed opinion from all relevant quarters with all the opportunities for comprehensive and integrated treatment which such consideration affords. Having already concluded that the discovery-deposition procedure is not authorized by the General Admiralty Rules themselves, we should hesitate to construe General Rule 44 as permitting a change so basic as this to be effectuated through the local rule-making power, especially when that course was never reported to Congress as would now be required under 28 U.S.C. § 2073, 28 U.S.C.A. § 2073." 363 U.S. at page 650, 80 S.Ct. at page 1306.

The Miner case, of course, is not cited as authority that the procedural innovation sought to be used in this case is or is not within the rule-making power of the Supreme Court, or that the extradition magistrate may or may not be authorized to order the taking of depositions under any circumstances. Implicit in Miner, however, is the warning that federal courts must proceed with extreme caution when asked to sanction basic procedural innovations which lie in that misty land where judicial and legislative powers meet.[5] Moreover, when called upon to justify such innovations on the basis of inherent power, the courts should be doubly cautious that the exercise of this power is appropriate to the particular case. Although neither the Treaty nor the statutes provide for the taking of depositions in the asylum country, Venezuela argues that "Certainly the extradition judge must be, and under the Treaty is, free to establish some method of proceeding." Such a principle would give to each individual judge unlimited power on an *ad hoc* basis to create whatever procedure he might choose. Procedural chaos could easily result. The Federal rules both criminal and civil were carefully drafted to avoid such a situation. In all likelihood the number of occasions for international extradition was not sufficiently large to justify the codification of procedural rules which should apply thereto. In a field as important from a national foreign policy point of view, it should not be the function of judges individually or collectively to write such a code. If there are to be "procedural innovations" of general application, they should come as suggested by the Supreme Court (363 U.S. 641, 650, 80 S.Ct. 1300, 1306) "only after mature consideration of informed opinion from all relevant quarters with all the opportunities for comprehensive and integrated treatment which such consideration affords." Until such time as a procedural code of general applica-

---

4. The cases cited in the briefs and cases examined in independent research do not shed any authoritative light on the subject.

5. For cases which indicate that in the absence of statute there exists no power to authorize pre-trial depositions, see Hanks Dental Ass'n v. International Tooth Crown Co., 1904, 194 U.S. 303, 24 S.Ct. 700, 48 L.Ed. 989; Heister v. Lehigh & N. E. R. Co., D.C.S.D.N.Y.1931, 50 F.2d 928; Tobacco and Allied Stocks v. Transamerica Corp., D.C.1954, 16 F.R.D. 545.

tion in international extradition is written, we are convinced that any power in the extradition magistrate to create his own rules or procedures should be limited to situations where the exercise of that power is essential in the particular case. Thus, before deciding what, if any, power resides in the extradition magistrate to authorize depositions, it is necessary to determine what circumstances might justify the use of this supposed power, and whether these circumstances exist in the instant case.

Even under the liberal provisions of the Civil Rules, certain courts have indicated that when a party seeks the production of documents under Rules 34 or 45, some showing of need is necessary after the proper objection has been made.[6] The Federal Rules of Criminal Procedure, which, of course, are not directly applicable to extradition (see Rule 54(b) (5), but which are available for analogy purposes,[7] provide for the taking of depositions to be used at trial only when necessary "to prevent a failure of justice." Rule 15(a). As was stated by the Advisory Committee on the Rules:

> "Unlike the practice in civil cases in which depositions may be taken as a matter of right * * * it was contemplated that in criminal cases depositions would be used only in exceptional situations." Note to preceding Rule 15, 18 U.S.C.A.[8]

It is also not without significance that the United States Government, which in federal criminal prosecutions is in some respects in a position similar to the de-manding country in an extradition proceeding, cannot avail itself of the deposition privilege made available to defendants by Criminal Rule 15. The unavailability of this procedure to federal prosecutors indicates that even if the demanding country should not be denied the privilege absolutely, nevertheless whatever deposition privilege may be granted to the demanding country should be exercisable only in exceptional situations where a strong showing of need is made.

■■ Nor is the policy favoring and facilitating extradition (see Factor v. Laubenheimer, 1933, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315; 1 Hyde, International Law § 310 (1922); 48 Yale L.J. 701 (1939)) frustrated by so limiting whatever deposition-subpoena privilege that may exist. An examination of the extradition treaties, statutes, and decisions reveals that the procedural framework of international extradition gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation. First, 18 U.S.C. § 3190, permits the demanding country to introduce properly authenticated and certified *ex parte* depositions, etc., gathered at home. Second, the *ex parte* advantages of § 3190 are not available to the defendant, In re Luis Oteiza y Cortes, 1890, 136 U.S. 330, 10 S.Ct. 1031, 34 L.Ed. 464. Third, the defenses available to the fugitive are extremely limited: he cannot, for example, introduce evidence which contradicts the demanding country's proof (Collins v. Loisel, 1922, 259 U.S. 309, 42 S.Ct. 469, 66

6. Compare Boeing Airplane Co. v. Coggeshall, 1960, 108 U.S.App.D.C. 106, 280 F.2d 654, with Connecticut Mutual Life Insurance Co. v. Shields, D.C.S.D.N.Y. 1955, 17 F.R.D. 273.

7. *Extradition* proceedings have been referred to by the Supreme Court as being of a criminal nature. See Grin v. Shine, 1902, 187 U.S. 181, 23 S.Ct. 98, 47 L. Ed. 130; Rice v. Ames, 1901, 180 U.S. 371, 21 S.Ct. 406, 45 L.Ed. 577.

8. See also 18 U.S.C.A. § 3191, which authorizes the extradition magistrate to subpoena witnesses for indigent fugitives when the fugitive cannot "safely go to trial without them." In Gallina v. Fraser, D.C.Conn., 1959, 177 F.Supp. 856, affirmed 2 Cir., 1960, 278 F.2d 77, certiorari denied 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74, the Court, in holding that the extradition magistrate did not abuse his discretion in denying the fugitive's motion to subpoena witnesses pursuant to § 3191, stated that the subpoena should be ordered in situations where "the evidence sought indicates that the person charged will be denied a fair hearing unless the witnesses are produced." Id. 177 F.Supp. at page 869.

L.Ed. 956; Charlton v. Kelly, 1913, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274); evidence to establish alibi (Desmond v. Eggers, 9 Cir., 1927, 18 F.2d 503, motion to stay execution denied, 274 U.S. 722, 47 S.Ct. 657, 71 L.Ed. 1341; In re Wadge, D.C.1883, 15 F. 864); evidence of insanity (Charlton v. Kelly, 1913, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274); and evidence that the statute of limitation has run (Hatfield v. Guay, 1 Cir., 1937, 87 F.2d 358, certiorari denied 300 U.S. 678, 57 S.Ct. 669, 81 L.Ed. 883). Fourth, the actual guilt of the fugitive does not have to be established, but instead the demanding country need show only probable cause that he is guilty. Benson v. McMahon, supra. Thus, while liberal deposition procedures in civil litigation may be favored by the courts, it is obvious that because of these procedural advantages the demanding country's need to invoke the judicial process of the United States to gather evidence of culpability would arise only in the extraordinary case. It would be a perverse doctrine indeed which would hold that where the peculiarities of a juridical area require extending to a party extraordinary remedies, necessarily other extraordinary remedies must be readily granted.

We thus turn to the crucial question in this case, namely, has Venezuela shown such exceptional circumstances as would justify the granting of the depositions it seeks. The complaint filed by Venezuela charges Jimenez *inter alia* with various financial crimes involving misappropriation of public funds in violation of various provisions of the Penal Code of Venezuela. The supporting documents, totalling approximately 2,000 pages, filed in the extradition hearing, include charges by the Attorney General of Venezuela, the finding of the highest court of that country that the charges and evidence establish cause for prosecution and arrest, the warrant of arrest of that court, and a substantial quantity of evidence submitted to that court.[9]

According to counsel for Venezuela, the evidence discloses that many of the illegal financial transactions charged were accomplished with the assistance of others using facilities of certain banks in the United States, including the banks involved in these appeals. Asserting that Jimenez has on deposit in United States banks about $4,400,000, Venezuela claims that these depositions will serve the following purpose:

"Existing sources will trace to its illegal sources about $500,000 of these deposits. The record of the banks to which the deposition subpoenas are directed will assist in tracing the balance to its sources, and there is every likelihood that these records will disclose significant additional deposits."

Although at the hearing below and at the proceedings in Miami it was determined that the evidence sought by the depositions was material and relevant, no determination has yet been made that this evidence is necessary to Venezuela's *prima facie* extradition case. The application to take depositions is directed towards the crime of "Embezzlement or criminal malversation" and under Article II of the Treaty the amount embezzled to constitute an extraditable offense must exceed $200 (USA) or B.1,000 (Venezuela). Without further discovery, Venezuela already has existing sources which will trace about $500,000, an amount far in excess of the statutory requirement. Naturally, Venezuela would like to trace the balance of the alleged $4,400,000 which it believes may be on deposit in American banks. It also hopes that the depositions "will disclose significant additional deposits." However, the extradition hearing is not the occasion on which the accused's guilt is to be established with the certainty and finality as would be required upon the actual trial. Were this a proceeding in our courts for the discovery of assets, the relief granted

9. Reserving the right to move to open at a later date, counsel for Venezuela told Judge Mathes it was resting on that record.

might well be proper. But this is not such a proceeding. If, as Venezuela has indicated, it is willing to rest its case upon the record already made, the additional evidence sought would appear to be merely cumulative. Nor has any showing been made as to how $4,400,000 will exceed in legal effectiveness, insofar as meeting the statutory requirement of over $200 is concerned, the $500,000 already claimed by Venezuela. Since at this stage there is no present showing of need, it would be unwise in the absence of more specific statutory command or direction to sanction such broad deposition proceedings as are now sought.

The orders are reversed.

WATERMAN, Circuit Judge (concurring).

I concur in the result.