In the Matter of Jan Alf ASSARSSON,
Relator–Appellant.

No. 79–1689.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 7, 1979.

Decided Oct. 31, 1980.

Rehearing and Rehearing Denied
Dec. 23, 1980.

Sheldon Davidson, David P. Schippers, Chicago, Ill., for relator–appellant.

Gary S. Shapiro, Chicago Strike Force, Chicago, Ill., for appellee.

Before FAIRCHILD, Chief Judge, and BAUER and WOOD, Circuit Judges.

BAUER, Circuit Judge.

Relator–appellant Jan Alf Assarsson was ordered extradited to Sweden for trial on charges of arson, fraud, and attempted fraud. The district court denied his petition for a writ of habeas corpus. We affirm.

I

Jan Alf Assarsson is a citizen of Sweden. Having lived in this country since 1960, he is, at present, a permanent resident of the United States. Assarsson conducts an import–export business including the purchase of merchandise for resale in European countries.

During 1974–1975, Continental Trading Company ("Continental"), a Swedish corporation of which Assarsson was a director, purchased large quantities of art reproductions from a Spanish firm and stored them in a public warehouse in Malmo, Sweden. Assarsson insured the stock for fifteen million Swedish crowns on January 9, 1975. The premium was paid on February 13, 1975. On February 18, 1975, the merchandise was destroyed in a fire. Continental filed a claim on March 12, 1975, with the Vegete Insurance Company ("Vegete") for ten million Swedish crowns.

In 1975, another Swedish corporation of which Assarsson was a stockholder and director, Stereo Music Center, A.B. ("Stereo Music"), purchased art reproductions, tape cassettes, iron fittings, and wigs from General Promotions, Inc., a firm operated in the United States by a business associate of Assarsson's. The goods were shipped to and stored in a warehouse in Copenhagen, Denmark. Stereo Music took out insurance early in 1975, but the policy was not effective until the final premium installment was paid on September 18, 1975. On September 19, 1975, fire destroyed the merchandise. On October 3, 1975, Stereo Music filed a claim for thirty–four million Swedish crowns with the Skandia Insurance Company ("Skandia") in Sweden.

Before the September fire, Stereo Music had sold the tape cassettes to Carl Gustaf Bothen, a Swedish businessman. Bothen paid for the cassettes by causing a Letter of Credit in the amount of $190,000 to be issued directly to General Promotions. Almost all of the cassettes sold to Bothen were destroyed in the Copenhagen fire.

An American citizen named Angelo Chionis was arrested just outside the Copenhagen warehouse. Chionis was convicted of the arson and sentenced by a Danish court to ten years in prison. He subsequently made a statement implicating Assarsson in the arson.

After Chionis' arrest and conviction, a two–pronged investigation was undertaken by Swedish authorities: first, to determine whether the Malmo and Copenhagen fires were planned arsons by Continental and Stereo Music (rendering the claims filed with the insurance firms fraudulent) and second, to ascertain whether Assarsson or others misled Bothen as to the value of the cassettes and their potential European selling price in order to induce him to purchase the cassettes and to issue the Letter of Credit. Neither Vegete nor Skandia has paid the claims.

In March, 1976, Malmo Prosecuting Attorney Ragnar Emanuelsson filed a petition for Assarsson's arrest. The petition accused Assarsson of committing gross arson in two instances (Malmo and Copenhagen), attempted gross fraud in two instances (the claims filed with Vegete and Skandia), and gross fraud (against Bothen). Pursuant to

that petition, Malmo District Court Judge Ake Roth issued a Ruling dated April 1, 1976. The ruling asserted that Assarsson was "suspected on good grounds" of committing the crimes and declared Assarsson arrested.

On May 15, 1978, the United States Attorney for the Northern District of Illinois, acting on behalf of the Government of Sweden, filed a verified extradition complaint. It alleged that Assarsson was "duly and legally charged in Sweden with having committed the crimes of arson, fraud and attempted fraud." The complaint further alleged that Sweden had demanded Assarsson's surrender through the appropriate diplomatic channels. J.App. at 13–14.[1]

Magistrate Balog held a hearing on June 30, 1978, pursuant to 18 U.S.C. § 3184.[2] Assarsson contended that extradition was inappropriate because no "charges" were pending against him under Swedish law. He also argued that the Copenhagen arson was not an extraditable offense under the treaty because it occurred outside Sweden and that there were no reasonable grounds to believe Assarsson guilty of the various alleged offenses. On October 20, 1978, the magistrate denied each of Assarsson's claims and issued an order of commitment directing the United States Marshal to take

Assarsson into custody and hold him until his surrender by the United States to Sweden. J.App. at 128–141. The magistrate denied reconsideration of his order on November 21, 1978, ruling that Assarsson had been charged "under the terms of the treaty" even though the time for filing formal criminal charges against Assarsson had been extended until November 1980 by the Swedish court. J.App. at 156.

Assarsson petitioned for a writ of habeas corpus, challenging the legality of the order of extradition on each of the grounds before the magistrate. The district court denied the petition after a hearing and upheld each of the magistrate's determinations.

## II

Assarsson first challenges the magistrate's determination, upheld by the district court, that he has been charged with a crime. Although ordered arrested by the Swedish court, a formal document, called a "charge" in the Swedish criminal code, has not yet been filed against Assarsson.[3] Assarsson asserts here, as he did before the magistrate and the district court, that since this document has not yet been filed against him, he cannot be extradited.

1. The 1978 proceeding was the second attempt to extradite Assarsson. The United States Attorney filed a complaint on June 30, 1977. Magistrate Balog dismissed the extradition proceeding on November 8, 1977, because the exhibits failed to include a warrant of arrest or other order of detention by the requesting State (Sweden), as required by Article XI of the Treaty. See n.7, *infra*. The magistrate made no findings of fact or conclusions of law as to any other issue. The defect was remedied in the second complaint.

2. 18 U.S.C. § 3184 provides:
   Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or conven-

tion, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

3. Although termed as such by the parties, the translation of the Swedish Code of Judicial Procedure refers to the document as a summons. *The Swedish Code of Judicial Procedure*, ch. 45 §§ 1, 4, 9 (A. Bruzelius, trans. 1968); J.App. at 122, 123, 124.

The magistrate ruled that Assarsson had been charged with crimes "under the terms of the treaty." The district court agreed that

> there is a charge here as that term is used in the treaty. I recognize the existence of a very respectable argument to the contrary, but on the balance, I think that however dilatory the procedures that have been initiated by the Swedish Government here indicate that they have accused Mr. Assarsson of these crimes, they have done so in a preliminary way which, under their law, can result in his incarceration under the conditions set forth in their law. It is not a mere case of suspicion; it is a case where probable cause has been found by the Swedish judge; so I believe that there is a pending charge.

Transcript of Proceedings, April 11, 1979, at 91–92; J.App. at 179–80. We do not review the magistrate's determination that Assarsson was "charged," because we hold that it is not reviewable on habeas corpus.

■ Extradition rulings are not directly appealable. Review is available only by way of a petition for writ of habeas corpus. *Collins v. Miller*, 252 U.S. 364, 369, 40 S.Ct. 347, 349, 64 L.Ed. 616 (1920). Because the writ is not the equivalent of an appeal, it may be granted only in limited circumstances.

> That writ as has been said very often cannot take the place of a writ of error. It is not a means for rehearing what the magistrate already has decided. The alleged fugitive from justice has had his hearing and *habeas corpus* is available only to inquire whether the magistrate has jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.

*Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925); *Garcia–Guillern v. United States*, 450 F.2d 1189, 1191 (5th Cir. 1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972).

■ There is no question that, under *Fernandez*, the Court may review the magistrate's finding that the offense stated in the complaint is among those listed as an extraditable offense in the treaty. Since arson, fraud, and attempted fraud are extraditable offenses under Article II of the treaty,[4] the Court's review would usually

---

4. Article II provides:
   Extradition shall be granted, subject to the provisions of this Convention, for the following offenses:
   1. Murder, including infanticide; the killing of a human being, when such act is punishable in the United States as voluntary manslaughter, and in Sweden as manslaughter.
   2. Malicious wounding; mayhem; willful assault resulting in grievous bodily harm.
   3. Kidnapping; abduction.
   4. Rape; abortion; carnal knowledge of a girl under the age specified by law in such cases in both the requesting and requested State.
   5. Procuration, defined as the procuring or transporting of a woman or girl under age, even with her consent, for immoral purposes, or of a woman or girl over age, by fraud, threats, or compulsion, for such purposes with a view in either case to gratifying the passions of another person; profiting from the prostitution of another.
   6. Bigamy.
   7. Robbery; burglary, defined to be the breaking into or entering either in day or night time, a house, office, or other building of a government, corporation, or private person, with intent to commit a felony therein.
   8. Arson.
   9. The malicious and unlawful damaging of railways, trains, vessels, aircraft, bridges, vehicles, and other means of travel or of public or private buildings, or other structures, when the act committed shall endanger human life.
   10. Piracy; mutiny on board a vessel or an aircraft for the purpose of rebelling against the authority of the Captain or Commander of such vessel or aircraft; or by fraud or violence taking possession of such vessel or aircraft.
   11. Blackmail or extortion.
   12. Forgery, or the utterance of forged papers; the forgery or falsification of official acts of government, of public authorities, or of courts of justice, or the utterance of the thing forged or falsified.
   13. The counterfeiting, falsifying or altering of money, whether coin or paper, or of instruments of debt created by national, state, provincial, or municipal governments, or of coupons thereof, or of bank–notes, or

stop there. But Assarsson argues that the magistrate's finding of formal "charges" is also reviewable under the second *Fernandez* category. He argues that the

existence of a "charge" falls within the scope of habeas corpus review since an extradition Magistrate cannot determine whether an extraditable offense under Article II has been charged unless it is first determined that the Relator–appellant has in fact been properly "charged" with committing such a crime.

Brief for Appellant at 9–10.[5]

■ Assarsson in effect argues that extradition is conditional on the existence of formal charges. Assarsson agrees, however, that *Fernandez* defines the scope of review. Under *Fernandez*, we may review only whether "the offense charged is within the treaty." 268 U.S. at 312, 45 S.Ct. at 542. We may therefore review only those conditions which preclude extradition for offenses which are otherwise extraditable. Any such conditions must come from the treaty itself. For example, in *Brauch v. Raiche*, 618 F.2d 843 (2d Cir. 1980), the United States–Great Britain treaty permitted extradition for offenses "within any of the descriptions listed in the Schedule annexed to this Treaty . . . or any other offense, [only] if: . . . the offense constitute[d] a felony under the law of the United States of America." *Id.* at 847. The treaty thus imposed a requirement of double criminality. Unless the offense was criminal in both jurisdictions, therefore, the "offense charged" could not be "within the treaty." *Fernandez v. Phillips*, 268 U.S. at 312, 45 S.Ct. at 542. The court in *Brauch* could therefore properly review, on habeas corpus, the relator's contention that there was a lack of double criminality.

■ The existence of formal charges can be reviewable, then, only if the treaty itself conditions extradition for the offenses listed in Article II on the existence of formal charges. The United States–Sweden treaty does not so condition extradition.

Article II of the treaty, as we have noted, lists the offenses for which extradition may be granted. Article III of the treaty lists two conditions. It provides:

### ARTICLE III

1. The requested State shall, subject to the provisions of this Convention, ex-

the utterance or circulation of the same; or the counterfeiting, falsifying or altering of seals of state.

14. Embezzlement by public officers; embezzlement by persons hired or salaried, to the detriment of their employers; larceny; obtaining money, valuable securities or other property by false pretenses, or by threats of injury; receiving money, valuable securities or other property knowing the same to have been embezzled, stolen or fraudulently obtained.

15. Making use of the mails or other means of communication in connection with schemes devised or intended to deceive or defraud the public or for the purpose of obtaining money under false pretenses.

16. Fraud or breach of trust by a bailee, banker, agent, factor, trustee or other person acting in a fiduciary capacity; or director or member or officer of any company.

17. Soliciting, receiving, or offering bribes.

18. Perjury; subornation of perjury.

19. Offenses against the laws for the suppression of slavery and slave trading.

20. Offenses against the bankruptcy laws.

21. Smuggling, defined to be the act of willfully and knowingly violating the customs laws with intent to defraud the revenue by international traffic in merchandise subject to duty.

22. Offenses against the laws relating to the traffic in, use of, or production or manufacture of, narcotic drugs or cannabis.

23. Offenses against the laws relating to the illicit manufacture or traffic in poisonous chemicals or substances injurious to health.

24. The attempt to commit any of the above offenses when such attempt is made a separate offense by the laws of the Contracting States.

25. Participation in any of the above offenses.

Convention on Extradition, Oct. 24, 1961, United States–Sweden (hereinafter referred to as "treaty"), art. II, T.I.A.S. No. 5496.

**5.** It is unclear whether Assarsson relies on the use of the word "charged" in *Fernandez* or in the treaty. We must construe his argument to be based on interpretation of the treaty, however, because the courts cannot expand the obligations of another nation under a treaty. *See Grin v. Shine*, 187 U.S. 181, 191–92, 23 S.Ct. 98, 102, 47 L.Ed. 130 (1902).

tradite a person charged with or convicted of any offense enumerated in Article II only when both of the following conditions exist:

(a) The law of the requesting State, in force when the offense was committed, provides a possible penalty of deprivation of liberty for a period of more than one year; and

(b) The law in force in the requested State generally provides a possible penalty of deprivation of liberty for a period of more than one year which would be applicable if the offense were committed in the territory of the requested State.

2. When the person sought has been sentenced in the requesting State, the punishment awarded must have been for a period of at least four months.

Convention on Extradition, Oct. 24, 1961, United States–Sweden (hereinafter referred to as "treaty"), art. III, T.I.A.S. No. 5496. Other articles impose additional conditions: Article IV (extraterritorial offenses, see discussion at 13–16, *infra*); Article V ("purely military" and "political offenses" exempted from extraditable offenses); Article VIII (death penalty cases). The filing of formal charges is not stated anywhere as a prerequisite to extradition. The treaty does not state "extradition may only be granted for those offenses for which formal charges have been filed against the person sought" or anything remotely akin to that. Because the treaty does not so limit the class of extraditable offenses, we may not review the magis-

trate's determination that Assarsson was charged "under the terms of the treaty."

Assarsson seeks to find a so-called "substantive" requirement that "charges" be filed in other parts of the treaty. Article I of the treaty provides:

## ARTICLE I

Each Contracting State undertakes to surrender to the other, subject to the provisions and conditions laid down in this Convention, those persons found in its territory who have been *charged with or convicted* of any of the offenses specified in Article II of this Convention committed within the territorial jurisdiction of the other, or outside thereof under the conditions specified in Article IV of this Convention; provided that such surrender shall take place only upon such evidence of criminality as, according to the laws of the place where the person is sought shall be found, would justify his commitment for trial if the offense had been there committed.

The word "charge" is thus used in contrast to "convicted;" that is, persons convicted or charged with certain crimes may be extradited.[6] The term is used in the generic sense only to indicate "accused." Assarsson argues that the language in the United States–Sweden treaty creates an additional "substantive" requirement that a formal document called a "charge" be filed with the extradition request. Assarsson's argument converts the treaty's language that individuals be "charged," a verb, into a

6. "Charged is also used in the following articles of the treaty:

ARTICLE XII

1. The Contracting States may request, through the diplomatic channel, the provisional arrest of a person, provided that the offense for which he is sought is one for which extradition shall be granted under this Convention. The request shall contain:

(a) A statement of the offense with which the person sought is charged or of which he has been convicted;

(b) A description of the person sought for the purpose of identification;

(c) A statement of his whereabouts, if known; and

(d) A declaration that there exist and will be forthcoming the relevant documents required by Article XI of this Convention.

2. If, within a maximum period of 40 days from the date of the provisional arrest of the person in accordance with this Article, the requesting State does not present the formal request for his extradition, duly supported, the person detained will be set at liberty and a new request for his extradition will be accepted only when accompanied by the relevant documents required by Article XI of this Convention.

Treaty, art. XII. "Charged" is also used in Article XI, *see* n. 7 *infra*.

requirement that "charges", a noun, be filed. It is based on semantics, not substance.

In the first place, the treaty itself lists the substantive requirements that must be satisfied to grant extradition. The treaty requires, in Article XI, that certain certified documents accompany the request.[7] These include a "duly certified or authenticated copy of the warrant of arrest or other order of detention." If the parties had wished to include the additional requirement that a formal document called a charge be produced, they could have so provided. Assarsson replies that the requirements in Article XI. are only "evidentiary," not "substantive." Even viewed as such, his argument fails. For no better evidence of a "substantive" requirement of a charge exists than a copy of the "charge" itself. Since the parties chose not to require production of the charge document, we can easily infer that they did not require the "substance" of a charge either.

Courts have frequently addressed claims that the offense charged is not within the treaty because of some condition imposed by the treaty. *E. g. Brauch v. Raiche*, 618 F.2d at 847 (dual criminality); *see also Ziyad Abu Eain v. Wilkes*, No. 80–1487, *appeal pending* (7th Cir.) (whether "political offense" limitation is reviewable on habeas corpus). But in no case disclosed by the parties or our research has the word "charged" been construed as appellant suggests. Indeed, similar contentions have been expressly rejected as not reviewable on habeas corpus. The Fifth Circuit flatly held in *Garcia–Guillern v. United States*, 450 F.2d at 1193 n.1, that the

> contention that [the person whose extradition is sought] has never been properly or legally charged with a crime in accordance with the treaty is not appropriate for consideration. A petition for the writ of habeas corpus is not to be used as a means for rehearing what a committing court has already decided.

*Accord, Freedman v. United States*, 437 F.Supp. 1252, 1258 (N.D.Ga.1977).[8] *See also United States v. Marasco*, 325 F.2d 562, 565 (2d Cir. 1963), *cert. denied sub nom. Petrushansky v. Marasco*, 376 U.S. 952, 84 S.Ct. 969, 11 L.Ed.2d 971 (1964) (while court views provision in Mexican Constitution requiring formal complaint in some cases as "primarily for the courts of that country to interpret," oral statements of Mexican judge "would seem to satisfy" the requirement).

Assarsson further argues that, unless the treaty is read to require the production of formal Swedish charges, he can be extradited on mere suspicion. Appellant's Reply Brief at 9. But the treaty plainly provides that the sufficiency of the evidence underlying the extradition is to be judged by

---

**7.** A request for extradition of a person "merely charged" with an offense must be supported by the following documents:

(1) A duly certified or authenticated copy of the warrant of arrest or other order of detention issued by the competent authority of the requesting State.

(2) Any depositions, record of investigation, or other evidence upon which such warrant or order may have been issued.

(3) Such other evidence or proof as may be deemed competent in the case.

(4) The documents specified in this Article must include a precise statement of the criminal act with which the person sought is charged or of which he has been convicted and the place and date of the commission of the criminal act. The said documents must be accompanied by an authenticated copy of the texts of the applicable laws of the requesting State including the laws relating to the limitation of the legal proceedings or the enforcement of the penalty for the offense for which the extradition of the person is sought, and data or records which will prove the identity of the person sought as well as information as to his nationality and residence.

(5) The documents in support of the request for extradition shall be accompanied by a duly certified translation thereof into the language of the requested State.

Treaty, art. XI.

**8.** *Freedman* relied on 18 U.S.C. § 3190 in concluding that the issue was not reviewable. The text of the statute is reproduced at 1246, *infra.* The court agreed that the United States' certification that the " 'warrant contained in the paper still exists ... [was] binding upon this Court to prove the existence of the charge.' " 437 F.Supp. at 1258. While we agree with the result, we do not concur with the *Freedman* reasoning.

American law. Treaty, Art. I. As will be discussed *infra* at 1245–1247, probable cause is necessary to extradite. A formal document, issued by the Swedish government in addition to those which the treaty already requires, will not alter our review of probable cause.

■ The court's refusal to review compliance with foreign criminal procedure is not a formalistic application of outmoded law. Rather, the narrow scope of review is based on respect for the sovereignty of other nations. While our courts should guarantee that all persons on our soil receive due process under our laws, that power does not extend to overseeing the criminal justice system of other countries. This respect is embodied in the procedural framework of international extradition, which "gives to the demanding country advantages most uncommon to ordinary civil and criminal litigation." *First National City Bank of New York v. Aristeguieta*, 287 F.2d 219 (2d Cir. 1960).

We are also not expected to become experts in the laws of foreign nations. *See Grin v. Shine*, 187 U.S. 181, 23 S.Ct. 98, 47 L.Ed. 130 (1902). The treatment of this case below demonstrates the dangers inherent in determining the applicability of foreign law. The magistrate held an extensive hearing, complete with experts, exhibits, and much other evidence, to try to determine whether there was compliance with Swedish law. We often have difficulty discerning the laws of neighboring States, which operate under the same legal system as we do; the chance of error is much greater when we try to construe the law of a country whose legal system is much different from our own. The possibility of error warns us to be even more cautious of expanding judicial power over extradition matters.

The review permitted by *Fernandez* is workable and protective of the relator's rights under United States law. Since we decide that the magistrate's determination that Assarsson was properly charged is not within the scope of review on habeas corpus, we do not reach the merits of appellant's argument.

### III

Assarsson's next challenge is that the Copenhagen arson is not an extraditable offense under the treaty. If it is not, he may not be tried for the Copenhagen arson in Sweden under the principle of specialty. *See Shapiro v. Ferrandina*, 478 F.2d at 905–07; W. Bishop, *International Law* 577 (3d ed. 1971).

■ The treaty, in Article I, anticipates that some extraterritorial crimes are extraditable. Article I provides:

Each Contracting State undertakes to surrender to the other . . . those persons . . . who have been charged with or convicted of . . . offenses . . . committed . . . outside [the territorial jurisdiction of the other] under the conditions specified in Article IV.

J.App. at 3.[9] Article IV, section 2 of the treaty defines the conditions:

When the offense has been committed outside the territorial jurisdiction of the requesting State, the request for extradition need not be honored unless the laws of the requesting State and those of the requested State authorize prosecution of such offense under corresponding circumstances.

We read the language as governing extradition under two different sets of circumstances: first, if the extraterritorial offense charged is prosecutable under the laws of both countries, the United States *must* extradite the accused; second, if the offense is prosecutable only under the laws of one nation, extradition is discretionary.

---

**9.** "Territorial jurisdiction" is defined in the treaty as:

[T]erritory, including territorial waters, and the airspace thereover, belonging to or under the control of one of the Contracting States; and vessels and aircraft belonging to one of

the Contracting States or to a citizen or corporation thereof when such vessel is on the high seas or such aircraft is over the high seas.

Treaty, art. IV § 3.

Assarsson argues that the second alternative is not supported by the treaty's language and that only "dual criminality" will support extradition for extraterritorial offenses. Since the United States generally does not prosecute citizens for crimes committed outside our borders, *see Schooner Exchange v. McFadden*, 11 U.S., 7 Cranch, 116, 3 L.Ed. 114, 11 U.S. 1812, he argues extradition is improper except for those few crimes for which the United States authorizes extraterritorial prosecution. We disagree. That the offense charged is not a crime in the United States is not necessarily a bar to extradition. "[I]f the extradition treaty so provides, the United States may surrender a fugitive to be prosecuted for acts which are not crimes within the United States." *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir.), *cert. denied*, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960); *Factor v. Laubenheimer*, 290 U.S. 276, 290–91, 54 S.Ct. 191, 194, 78 L.Ed. 315 (1933). The treaty language therefore controls. The plain language of this treaty indicates that the executive has discretion to extradite for extraterritorial offenses. Were the treaty language here "shall not ... unless" we might agree that discretion to extradite was lacking. But "need not ... unless" connotes discretion.

Assarsson's interpretation in effect converts "need not" to "shall not." The treaty itself demonstrates that the parties were able to state "shall not" when they meant it. The most telling example is presented in the very next article, Article V, which states that "extradition *shall not* be granted" for certain offenses.

Assarsson's reliance on *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936) is misplaced. The treaty there stated that "[n]either of the Contracting Parties shall be bound to deliver up its own citizens." *Id.* at 7, 57 S.Ct. at 101. Although holding the language to be a denial of authority to extradite United States citizens, the Court emphasized that treaties usually conferred express discretion to extradite nationals of the requested State. Since the treaty was unusual in not expressly granting discretion, the Court could properly infer that discretion was withheld. In addition, the "neither ... shall be," language stood without qualification in the *Valentine* treaty. Without the condition set forth here ("unless the laws ..."), the *Valentine* language is closer to "shall not" in connotation.

*Valentine* itself states that discretion to extradite may be granted by the terms of a treaty. 299 U.S. at 11, 57 S.Ct. at 103. The treaty here, by its language, grants discretion to extradite for extraterritorial offenses. Since we hold that the United States may grant the extradition request, we do not rule on the other ground relied on by the magistrate, *i. e.*, that the offenses were punishable under corresponding United States or Illinois law.

### IV

#### A

Assarsson finally challenges the magistrate's findings that there was probable cause to extradite him for each of the charged offenses. Assarson first asserts that the statement of Chionis, the convicted arsonist in the Copenhagen fire, is incompetent evidence to support the magistrate's determination.

Chionis referred to the initiator of the scheme as both Jan Jacobsson and Jan Assarsson and identified him as a Swedish businessman living in Chicago. Chionis also stated that he positively identified Assarsson from sixteen photographs shown to him by Swedish police officials. The photograph was not attached to the statement or included in any other government exhibit. The district court found that Chionis' statement was sufficiently corroborated by other evidence, notwithstanding the lack of a photograph. Assarsson contends that the failure to provide a photograph or any physical description renders Chionis' statement incompetent, and that without the Chionis statement there was no probable cause.

The admissability of evidence in an extradition case is governed by federal law. Section 3190 of Title 18, United States Code, provides that

[d]epositions, warrants or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required.

Assarson does not contest that he is the person sought for arrest or that he is the person ordered detained in Sweden. Brief for Appellant at 33 n. 3. This fact distinguishes the cases cited by Assarsson where the identify of the person seized in the requested State was at issue. *See, e. g. Raftery ex rel. Fong v. Bligh*, 55 F.2d 189, 193 (1st Cir. 1932).

Assarsson does not contest the authentication of the documents. We agree that, once certified under 18 U.S.C. § 3190, the statement was properly received into evidence. *See Galanis v. Pallanck*, 568 F.2d 234, 240 (2d Cir. 1977); *Shapiro v. Ferrandina*, 478 F.2d at 903 (certification of United States diplomatic officials is conclusive proof that the document is "properly and legally" authenticated and thus admissible).

The objection to the evidence goes to its weight, not its admissibility. *See Shapiro v. Ferrandina*, 478 F.2d 894, 902 (2d Cir.), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 33 (1973). As the court said in *Peroff v. Hylton*, 542 F.2d 1247, 1249 (4th Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977), another case involving extradition to Sweden,

> [i]t may be that on the full trial Peroff may be able to submit substantial proof that another rather than he was the perpetrator of the fraud, but that is a

matter for exploration during the trial in Sweden and not for extensive evidentiary inquiry during the extradition hearing.

**B**

Assarsson finally contests the sufficiency of the evidence adduced against him. The magistrate found that "*prima facie* evidence contained in Government's Exhibits are legal and competent as well as sufficient to sustain" the five charges alleged against Assarsson. J.App. at 134. The district court agreed that "there is probable cause to believe that the defendant Assarsson is guilty of each of the charges contained in the demanding charges." J.App. at 182.

We need not set out the evidence in detail to affirm the lower court's conclusion. The evidence contained in the government's exhibits demonstrates Assarsson's close connection with the arsons and the frauds. He ran the two companies involved, and both companies paid insurance premiums only days before the two arsons. The evidence indicates that Assarsson had some relationship with the sellers of the merchandise and that some of the merchandise was overvalued and over–insured. Assarsson also arranged the letter of credit transaction with Bothen.[10] Arson was proved in the Copenhagen fire and is a possibility in the Malmo fire. On habeas corpus, we must affirm if there was "any competent evidence tending to show probable cause." *Garcia–Guillern v. United States*, 450 F.2d at 1192; *Fernandez v. Phillips*, 268 U.S. at 312, 45 S.Ct. at 542; *Freedman v. United States*, 437 F.Supp. at 1265. We are convinced that the evidence satisfies this test. Of course, our decision does not constitute a final judgment on the guilt or innocence of the accused. *Fernandez v. Phillips*, 268 U.S. at 312, 45 S.Ct. at 542; *Jhirad v. Ferrandina*, 536 F.2d at 482; *United States ex rel. Hughes v. Gault*, 271 U.S. 142, 150, 46 S.Ct. 459, 460, 70 L.Ed. 875

---

10. The Swedish prosecutor charged that the intention behind the agreement was to finance the purchase of the goods, the shipping and storage, hiring of staff and payment of compensation to the arsonists until the insurance money from the Skandia Insurance Company was paid. Petition for Arrest, March 5, 1977, J.App. at 22.

(1926). That is a responsibility of the Swedish courts.

The order of the district court is

AFFIRMED.