**KING v. UNITED STATES.**

No. 12829.

Circuit Court of Appeals, Eighth Circuit.

Oct. 12, 1944.

730

Hugh M. Bland, of Fort Smith, Ark., for appellant.

Clinton R. Barry, U. S. Atty., of Fort Smith, Ark. (Philip G. Alston, Asst. U. S. Atty., of Fort Smith, Ark., on the brief), for appellee.

Before GARDNER, THOMAS, and RIDDICK, Circuit Judges.

THOMAS, Circuit Judge.

The appellant, Emery Speer King, was indicted, tried, convicted and sentenced for use of the mails in the execution of a scheme to defraud in violation of § 215 of the Criminal Code, 18 U.S.C.A. § 338, and he appeals. Reversal is sought on the grounds (1) that the evidence is insufficient to support the verdict; (2) that the prosecution was barred by the statute of limitations; and (3) that prejudicial evidence was erroneously admitted over his objections.

The indictment was in two counts. The first count charged that appellant and Raymond Clarence Fowler having devised a scheme to defraud one P. M. Claunts, a man more than 80 years of age of Hartford, Arkansas, by means of a horse race swindle, caused to be delivered by mail according to the direction thereon an envelope containing a bank draft drawn by Claunts on the First National Bank of Fort Smith, Arkansas, in the sum of $3,000 together with a collection slip of the First National Bank of Weslaco, Texas, payee of the draft. The second count charged that appellant in conjunction with Fowler, having devised the scheme described in count one, caused a bank draft for $3,000 drawn on the First National Bank of Dallas, Texas, to be mailed at Fort Smith, Arkansas, to the First National Bank of Weslaco, Texas.

The contention that the evidence is not sufficient to support the verdict was raised at the trial by motion for a directed verdict. Appellant urges that the evidence fails for two reasons: First, because he was not present when the letter referred to in count one was posted and, second, because the swindle was already consummated before the mails were used. Neither of these claims has merit. The evidence tended to show that the swindle was effected in Texas. The conspirators co-operated to induce Claunts at Weslaco, Texas, to draw on his deposit in the bank at Fort Smith, Arkansas. King participated in the entire transaction, even though he remained outside the bank door while Fowler and Claunts were inside procuring the draft and causing it to be mailed. Further, the transaction was not consummated and the purpose of the crime accomplished until the money was received and turned over to the swindlers. Until that was done Claunts retained the power to refuse to go further. The cases relied upon by appellant are not controlling.

The contention that the prosecution was barred by the statute of limitations was raised by motion to quash and by plea in bar, both of which were overruled.

Title 18 U.S.C.A. § 582 provides that: "No person shall be prosecuted, tried or punished for an offense, not capital, * * * unless the indictment is found, or the information is instituted, within three years next after such offense shall have been committed." By § 583 it is provided, however, that: "Nothing in sections 581 and 582 of this title shall extend to any person fleeing from justice."

The record and the evidence introduced at the trial tend to show that the offense charged in the indictment occurred in November, 1940. The fraudulent scheme was devised and executed in Texas. An indictment was returned against King and Fowler by the grand jury in Arkansas on March 5, 1943. On January 10, 1944, King was brought before the court which found that the indictment was defective. Upon request of the United States Attorney leave was granted to present the case against King to another grand jury then in session, and a second indictment, the one upon which he was tried, was returned on January 13, 1944.

It will be observed that the first or defective indictment was returned within the three-year period, while the second indictment upon which King was tried and convicted was returned approximately three years and two months after the commission of the crime, or two months after the three-year period had expired. This situation gives rise to the question whether King was during the time following the commission of the crime and before the second indictment was returned a fugitive from justice within the meaning of § 583, supra, so as to toll the statute of limitations for at least two months.

The pertinent facts are that King was not present personally in Arkansas when the crime was committed. His home was in Texas and the swindle was perpetrated

there. But in 1939 King and others had swindled a Mrs. D. B. Flagg out of $65,000 worth of foreign securities for which an indictment was returned against him in the Northern District of Texas on February 6, 1941. On the same day a capias was issued for his arrest and later returned "not found." On and after February 6, 1941, the agents of the Federal Bureau of Investigation searched for him and finally located and arrested him at Las Vegas, Nevada, on March 5, 1943, and he was returned to Dallas, Texas, where he pleaded guilty to the charge of swindling Mrs. Flagg.

Mrs. June Buckley testified that she met King in Fort Smith, Arkansas, in the spring of 1941, and later in the same year in Muskogee, Oklahoma. He then gave his name as John L. Ray.

 Upon these facts the court found that King was a fugitive from justice and that the three-year statute of limitation was tolled. With this conclusion we agree. He was a fugitive from the justice of the federal court of Texas at least from February 6, 1941, until he was apprehended by the F. B. I. agents at Las Vegas, Nevada, on March 5, 1943, or a period of more than two years. To be a fugitive from justice, within the meaning of the Act of Congress, it is not necessary that the party should have left the state or the judicial district where the crime is alleged to have been committed, after an indictment found, or for the purpose of avoiding an anticipated prosecution, but that, having committed a crime within a state or district, he has left and is found in another jurisdiction. Roberts v. Reilly, 116 U.S. 80, 97, 6 S.Ct. 291, 29 L.Ed. 544; "The simple fact that they [persons who have committed crime within a state] are not within the state to answer its criminal process when required renders them, in legal intendment, fugitives from justice." State v. Richter, 37 Minn. 436, 438, 35 N. W. 9, 10, quoted with approval in Appleyard v. Massachusetts, 203 U.S. 222, 231, 27 S.Ct. 122, 51 L.Ed. 161, 7 Ann.Cas. 1073. It is immaterial whether King was attempting to escape justice in the federal court in Texas, or the federal court in Arkansas, or both. In Streep v. United States, 160 U.S. 128, 134, 16 S.Ct. 244, 247, 40 L.Ed. 365, the Supreme Court said: "The statute speaks generally of 'fleeing from justice,' without restriction * * *. A person fleeing from the justice of his country is not supposed to have in mind the object of avoiding the process of a particular court, or the question whether he is amenable to the justice of the nation or of the state, or of both. Proof of a specific intent to avoid either could seldom be had, and to make it an essential requisite would often defeat the whole object of the provision in question." And see Brouse v. United States, 1 Cir., 68 F. 2d 294. This rule is particularly applicable in this instance. King testified in his own behalf; and on cross-examination he said that he was 57 years old and that he had made his living for the past twenty-five years, except for one short period, by swindling people. He further testified that he was under indictment in New York for using the mails to defraud and that the case had been pending since 1938 untried. The evidence shows, also, that at the time the offense described in the indictment was committed King gave his name as Huntington. Thereafter when he came into the state he assumed the name of Ray.

 As to the claim that King was not in the Western District of Arkansas when the crime was committed it is necessary only to observe that the nature of the offense was such that he could participate in its commission, even though he was not then physically present. Burton v. United States, 202 U.S. 344, 386-389, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Salinger v. Loisel, 265 U.S. 224, 235, 44 S.Ct. 519, 68 L.Ed. 989.

The most serious question presented by this appeal is the contention that the court erred in the admission of testimony over appellant's objection.

Upon the trial of the case the court over the objection of appellant received in evidence his own statement signed at Dallas, Texas, June 12, 1943, in respect of the indictment returned by the federal grand jury at Dallas on February 6, 1941, for the swindling of Mrs. D. B. Flagg. Offered as exhibit 4, this statement set out that he [King] had read and discussed the indictment with his attorney; that the allegations thereof so far as they referred to him were true; that he was guilty under all three counts of the indictment, and that he would voluntarily and of his own free will enter a plea of guilty to the indictment. King signed the statement with his own attorney and two F. B. I. agents as witnesses.

The statement was identified by Fred S. Dunn, who had been one of the witnesses thereto. He testified that he is a special

agent of the Federal Bureau of Investigation, stationed at Dallas, Texas; that after King was apprehended at Las Vegas, Nevada, and returned to Dallas, Texas, for trial on the indictment for swindling Mrs. Flagg, he, Dunn, talked to King in the jail in the presence of his attorney, Mr. Daily, and that King gave him the statement of his own free will.

After the statement, exhibit 4, was read to the jury, the court admitted over objection as exhibit 5 an authenticated copy of the indictment referred to in the statement. This indictment is in three counts. The first two counts charge King and others jointly with transporting in interstate commerce securities taken by fraud from Mrs. D. B. Flagg in violation of 18 U.S.C.A. § 415, and count three charges the same parties with conspiracy to violate said § 415 in violation of 18 U.S.C.A. § 418a. The indictment described in detail how King and his associates in 1939 in Texas fraudulently swindled Mrs. Flagg of foreign securities of the value of $65,-000. It is also shown that King pleaded guilty in the federal court at Dallas, Texas, to the three counts of the indictment.

In the instant case the court instructed the jury in reference to the two counts of the indictment that the burden was upon the government to prove beyond reasonable doubt that King and Fowler devised the scheme set out in the indictment and that they intended thereby to defraud Claunts.

In reference to the admission in evidence of exhibits 4 and 5 the court instructed the jury that all of such testimony "is only admitted in order to aid you in determining whether or not it was the intention of the defendant, if such a scheme was entered into, to defraud Claunts, and for that reason only." The court carefully instructed the jury that before considering this evidence they must find from other testimony the facts and dealings constituting the alleged scheme to defraud Claunts, and that the statement and the plea of guilty to the indictment were to be considered only on the issue of intent.

It is conceded that subject to many exceptions the general rule is that evidence that the accused has committed another crime independent of, and unconnected with, the one on trial is inadmissible; it is not competent to prove one crime by proving another. 22 C.J.S., Criminal Law, § 682, p. 1084. The exception relied upon by the government in this case is that evidence of other offenses by the accused is admissible to show criminal intent (1) where the other offenses are similar to and (2) not too remote in time from that charged. 22 C.J.S. Criminal Law, §§ 683-689; Jones on Evidence, 1913 ed., p. 144; Colt v. United States, 8 Cir., 190 F. 305, 307; Neff v. United States, 8 Cir., 105 F.2d 688, 691; Tinsley v. United States, 8 Cir., 43 F.2d 890, 893.

Of these two indicia of admissibility of evidence of other offenses to show intent, the first, similarity, must upon appeal be determined from the record, while the second, remoteness in time, is committed to the discretion of the trial court and "should not be interfered with by a reviewing court unless it is clear that the questioned evidence has no connection or bearing upon any of the issues involved in the charge." Neff v. United States, supra, 105 F.2d at page 692; Moore v. United States, 150 U.S. 57, 14 S.Ct. 26, 37 L.Ed. 996; Harper v. United States, 8 Cir., 143 F.2d 795, 803; Hartzell v. United States, 8 Cir., 72 F.2d 569, 584; Weiss v. United States, 5 Cir., 122 F.2d 675, 682; United States v. Sebo, 7 Cir., 101 F.2d 889, 891. In such cases the length of time interval between the acts affects the weight, rather than the admissibility, of such evidence. Viereck v. United States, 78 U.S.App.D.C. 279, 139 F.2d 847, 850; Holt v. United States, 6 Cir., 42 F.2d 103, 106. See, also, Clune v. United States, 159 U.S. 590, 592, 593, 16 S.Ct. 125, 40 L.Ed. 269; Brickey v. United States, 8 Cir., 123 F.2d 341, 344; Hilliard v. United States, 4 Cir., 121 F.2d 992, 997. The crime charged in the indictment admitted in evidence is alleged to have been committed a few months prior to the date of the crime for which appellant was on trial, but the two crimes are not so remote that this court may hold that the trial court abused its discretion in admitting the first indictment in evidence, provided the similarity between the two offenses is so clear as to show a close relation between the two offenses indicating a mental operation and approach so alike as to point to a common author.

A comparison of the two schemes in this instance discloses a striking similarity in the two swindles. In the swindle alleged in the indictment admitted in evidence the victim, Mrs. Flagg, was told that a suit case in the possession of one of the swindlers contained approximately $145,000 constituting winnings on the stock

market, but that the money would not be turned over to them unless they produced enough money to pay the company represented by the holder of the suit case had the market trend been adverse. Ostensibly to make up the required sum temporarily Mrs. Flagg's securities were fraudulently obtained and kept. In the instant case King and Fowler falsely represented to their victim that Fowler had placed bets on horse races until he had won $100,000, but that before the possession of the money could be obtained it was necessary to produce the sum of $50,000 to show that their bets had been made in good faith and that they could have paid had they lost. On this representation they fraudulently obtained from Claunts the sum of $3,000 to assist them temporarily. The point on which the appeal to the victim turns in each scheme is identical; the right to a large sum of money by putting up for a short interval a much smaller sum as an evidence of good faith and ability to pay had there been a loss in the gamble, and the pressing need for help in raising the required amount. The fact that the two schemes differed in that in one the betting was represented to be on horse races and in the other on the stock market is not material. The schemes in their essence are identical. In view of the similarity between the fraudulent schemes in the two cases; that King participated in both of them; and that they were perpetrated in the same general territory, it can not be said under the authorities that the court erred in admitting evidence of the fraud on Mrs. Flagg.

For the foregoing reasons the judgment appealed from is affirmed.