In the Matter of the Extradition of Sven Ulf Ingemar ASSARSSON.

Misc. No. 4–81–27.

United States District Court,
D. Minnesota,
Fourth Division.

May 12, 1982.

Douglas A. Kelley, Asst. U. S. Atty., Minneapolis, Minn., for United States of America.

Sheldon Davidson, David P. Schippers, Chicago, Ill., William Orth, Friedberg & Peterson, Minneapolis, Minn., for Sven Ulf Ingemar Assarsson.

ORDER

DIANA E. MURPHY, District Judge.

This matter is before the court pursuant to the objections of petitioner Sven Ulf Ingemar Assarsson to a magistrate's report and recommendation dated March 10, 1982, which recommends that his petition for habeas corpus, seeking relief from an extradition order, be denied.

*A. Background*

Sweden seeks the extradition of Assarsson in connection with his alleged complicity in gross arson on September 19, 1975 in Copenhagen, Denmark, and for complicity in gross fraud in Malmo, Sweden, on October 3, 1975. On November 3, 1977, the Malmo District Court, having found grounds to suspect him of those crimes, issued an injunction against his leaving the area without permission from the District Attorney or the District Court and required him to report to the police at certain intervals. His passport was confiscated. Nonetheless, he fled Sweden and came to the United States.

On January 26, 1979, the Malmo court found that Assarsson had not met the terms of his prior travel restriction and ordered him arrested. This order was entered upon motion of the Malmo District Attorney to conform to the Convention of Extradition between the United States of America and Sweden, 14 U.S.T. 1845, T.I.A.S. 5496 (1963) [the Treaty].

Pursuant to an arrest warrant issued on August 26, 1981, Assarsson was taken into custody. On August 26, the United States, acting on behalf of the Government of Sweden, filed a verified complaint alleging that Assarsson was "duly and legally charged in Sweden with the crimes of participation in gross arson and gross fraud," and seeking his extradition under the Treaty.

On September 1, 1981, Assarsson moved before United States Magistrate Floyd E. Boline to be released on bail pending his extradition hearing. The motion was denied by the Magistrate and subsequently denied by this court. The Eighth Circuit

Court of Appeals denied a request for bail on September 30, 1981.

On November 16, 1981, an extradition hearing was held before Magistrate J. Earl Cudd. On December 31, 1981, Magistrate Cudd issued an order denying Assarsson's motion to dismiss the extradition proceedings and certified him for extradition.

Assarsson sought review of the Magistrate's decision by filing a petition for a writ of habeas corpus. The court referred the matter to Magistrate Cudd for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3). On March 10, 1982, the Magistrate filed his report and recommendation that the petition be denied. Assarsson filed timely objections to the report, to which the United States submitted a response. An oral hearing on petitioner's objections was held on April 14, 1982. The court has made a *de novo* review and determination of those portions of the report to which objections have been made, pursuant to 28 U.S.C. § 636(b)(1).

Assarsson contends that the Magistrate's recommendation should not be accepted by the court because (1) he was not "charged" within the meaning of the Treaty, (2) the Magistrate erroneously excluded evidence at the extradition hearing pertaining to the method used to charge Swedish defendants under Swedish law, (3) the statute of limitations on the offense alleged has run, and (4) the Secretary of State does not have authority to extradite Assarsson for the alleged arson in Copenhagen, Denmark.

*B. Discussion*

1. *Was Assarsson "charged" within the meaning of the Treaty?*

Article I of the Treaty provides in relevant part:

Each Contracting State undertakes to surrender to the other, subject to the provisions and conditions laid down in this Convention, those persons found in its territory who have been *charged with or convicted of* any of the offenses specified in Article II of this Convention committed within the territorial jurisdiction

of the other, or outside thereof under the conditions specified in Article IV of this Convention . . . [emphasis added]

Assarsson argued at the extradition hearing that because he was not "charged" by Swedish authorities, as required by Article I, but was subject only to detention or arrest, the court lacked subject matter jurisdiction.[1] The Magistrate concluded that Assarsson was "charged" within the meaning of the Treaty. In his subsequent report and recommendation on the petition for habeas corpus, he found that whether this conclusion was error was not reviewable in a habeas proceeding, relying on *Matter of Assarsson*, 635 F.2d 1237, 1244 (7th Cir. 1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981).

In *Matter of Assarsson*, the Seventh Circuit held that a finding in an extradition proceeding that charges had been filed was not reviewable in a habeas corpus proceeding. *Id.* at 1244. The court reasoned as follows. Extradition rulings are not directly appealable; relief is available only by habeas corpus. Existence of formal charges can be reviewable only if the treaty conditions extradition on the existence of such charges, and the Treaty between the United States and Sweden does not so condition extradition. The word "charged" is used only in a generic sense to indicate "accused," and any argument to the contrary is based on mere semantics. Accordingly, the issue of whether a petitioner has been charged is not within the scope of habeas review.

The Seventh Circuit further noted that the Treaty has a number of substantive requirements that must be met as a prerequisite to extradition, including a requirement that a duly certified or authenticated copy of the warrant of arrest or other order of detention be presented by the government requesting extradition. Conspicuously absent from the Treaty is a requirement that documentation of a formal charge be presented, even though such documentation would be the best evidence that a charge exists. Finally, the court emphasized that respect for the sovereignty of other nations and the danger of error inherent in trying to interpret foreign law require that the scope of review in a habeas proceeding attacking an extradition order be narrow. *Id.* at 1244.

█ The reasoning of the Seventh Circuit is persuasive. It is of interest that the matter under consideration there was extradition of petitioner's brother for the alleged commission of the same crimes based on the incidents alleged herein.

Assarsson takes issue with the Seventh Circuit's approach. He argues that it ignores the holding of *Fernandez v. Phillips*, 268 U.S. 311, 45 S.Ct. 541, 69 L.Ed. 970 (1925), that review of a magistrate's jurisdiction is available in a habeas proceeding. It is his position that jurisdiction can only be found if a magistrate complies with the terms of the treaty. Since the Magistrate failed to comply with those terms by finding Assarsson was "charged within the meaning of the treaty," he acted without jurisdiction. He notes in support of his position that the parties to the Treaty used the term "charged," that Sweden is party to a European treaty which does not use the term "charged," and that no Swedish official has come before the Magistrate and stated that Assarsson was charged within the meaning of Swedish law.

The use of the word "charged" in the Treaty is not conclusive proof that the parties meant to require a formal charge under Swedish law as a prerequisite to extradition. Viewed within the context of the entire treaty, it is apparent that "charged" is used in its generic sense, and it is merely a matter of coincidence that part of the Swedish criminal justice process includes what Assarsson has chosen to characterize

---

1. It appears that although the Swedish court ordered Assarsson arrested, a formal document he refers to as a "charge" has not been filed against him. Actually, the translation of the Swedish Code of Judicial Process refers to the document as a "summons." *Matter of Assarsson*, 635 F.2d 1237, 1239, n.3 (7th Cir. 1980), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981).

as a charge. There is no requirement under the Treaty that a Swedish official come forward and allege that an extraditee has been charged. The Treaty is specific as to the type of proof required, and proof of a formal charge is not included among the requirements. *See e.g.* Art. XI.

It is clear that the Magistrate had jurisdiction to hold an extradition hearing herein under 18 U.S.C. § 3184. Because the Treaty does not condition extradition on the Swedish government's proceedings having reached the "charged" stage, any finding he may have made in that regard does not affect his jurisdiction.

■ Even if the matter of whether Assarsson was "charged" were reviewable, the Magistrate's finding would be upheld. Given the generic use of the term "charged" in the treaty, the Swedish proceedings against him could be said to constitute a charge of a crime. There is evidence that a Swedish judge has found "good grounds to suspect" Assarsson of crimes and ordered him to stay within a certain area unless he had permission to leave. In response to a request to conform his orders to the terms of the Treaty, he later repeated the good grounds finding and ordered Assarsson arrested. The verified complaint also alleges that he was "charged" with commission of a crime.

### 2. *Evidentiary Rulings*

At the extradition proceedings Assarsson offered evidence to show he had not been "charged" within the meaning of Swedish law. The evidence consisted of testimony of his Swedish attorney, portions of the Swedish Code, and testimonial stipulations by experts on Swedish law. The Magistrate refused to allow the matters into evidence. Assarsson contends this was reversible error.[2]

■ Because the matter of whether a formal charge has been brought is not reviewable in a habeas corpus proceeding, *Matter of Assarsson*, 635 F.2d at 1244, it

can be argued that the Magistrate's refusal to allow evidence on that issue in the original hearing is also not reviewable. Moreover, since the word "charge" is used in the Treaty in a generic sense, whether or not the stage of proceedings in Sweden had reached the level of a formal charge under Swedish law was irrelevant. Finally, the Magistrate, acting as a finder of fact, preserved the offer of proof, was aware of its contents, and has made it available to this court for review. It cannot be said that the refusal to receive this evidence constituted reversible error, even if review is proper.

### 3. *Statute of Limitations*

Article V § 2 of the Treaty provides that extradition shall not be granted when the legal proceedings have become "barred by limitation either according to the laws of the requesting State or the requested State." The Magistrate found that the Swedish statute had not yet run and that because Assarsson was fleeing from justice when he left Sweden in 1978, the United States statute of limitations was tolled. Assarsson does not dispute the finding relative to the Swedish statute, but he argues that the American statute has run. He claims it began to run once he informed federal officials of his whereabouts some eight months after leaving Sweden and that at that point, no later than November 24, 1978, he was no longer a person fleeing from justice. He argues the statute was never tolled by the filing of formal charges by Swedish authorities and that principles of tacking from civil cases should be applied.

The applicable American statute, 18 U.S.C. § 3282, provides that no person shall be prosecuted for a non-capital offense under federal law unless indictment is filed or information is instituted within five years after the offense has been committed. However, this limitation does not apply to "any person fleeing from justice." 18 U.S.C. § 3290.

---

**2.** Assarsson also alleges the evidence should have been received to explain an ambiguity regarding the tolling of the statute of limitations under Swedish law. There is no allega-

tion that the Swedish statute has run, however. The question of tolling goes only to application of the United States' statute of limitations, which has a much shorter period of limitation.

Various courts have discussed what constitutes a fugitive from justice. The Eighth Circuit has held in one case that leaving the jurisdiction where a crime is alleged to have been committed and later being found in another jurisdiction is sufficient. *King v. United States*, 144 F.2d 729, 731 (8th Cir. 1944), *cert. denied*, 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1945). Whether this holding should be applied broadly is doubtful. A number of courts have ruled that fugitive status depends on the accused's intent to avoid punishment. *See e.g. Caplan v. Vokes*, 649 F.2d 1336, 1341 (9th Cir. 1981); *Jhirad v. Ferrandina*, 486 F.2d 442, 444 (2d Cir. 1973); *Greene v. United States*, 154 F. 401 (5th Cir. 1907), *cert. denied*, 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357 (1907).

■ The evidence in this case supports a finding that Assarsson fled Sweden to escape prosecution and punishment. While subject to an injunction requiring him to stay within the Malmo area, he left the country entirely despite the confiscation of his passport. Although he made his whereabouts known to American authorities, the totality of his actions and the surrounding circumstances reveal that his intent to avoid prosecution did not change and that the American statute was therefore not tolled.

Assarsson argues that the Ninth Circuit's standard should control. He believes it requires concealment. In the Ninth Circuit a number of cases formulate the test of fugitive status as whether the accused "concealed himself with the intent to avoid arrest or prosecution." *See e.g. Caplan v. Vokes*, 649 F.2d at 1341; *United States v. Ballesteros-Cordova*, 586 F.2d 1321, 1323 (9th Cir. 1978); *United States v. Wazney*, 529 F.2d 1287, 1289 (9th Cir. 1976). That court has also determined that the burden of showing the accused is a fugitive is met by merely proving he knew he was wanted by the police and failed to submit to arrest. *United States v. Ballesteros-Cordova*, 586

F.2d at 1323 (citing *United States v. Wazney*, 529 F.2d at 1289). The evidence here supports a finding that Assarsson was a fugitive even under the standard applied in the Ninth Circuit. Moreover, there is no compelling reason to apply the Ninth Circuit's test rather than the standard of those circuits which require only intent to avoid prosecution.[3]

Because Assarsson was a fugitive, the United States statute of limitations was tolled, and his extradition is not barred for that reason. Because of this finding, the issue of tacking need not be reached.

4. *Surrender for the Alleged Copenhagen Arson*

Assarsson argues that because the alleged arson took place in Denmark, Sweden cannot request his extradition for that offense under the Treaty. The Magistrate found to the contrary.

Article IV of § 2 of the Treaty provides:

When the offense has been committed outside the territorial jurisdiction of the requesting State, the request for extradition *need not be honored* unless the laws of the requesting State and those of the requested State authorize prosecution of such an offense under corresponding circumstances. [emphasis added].

The Seventh Circuit has interpreted this language as follows:

We read the language as governing extradition under two different sets of circumstances: first, if the extraterritorial offense charged is prosecutable under the law of both countries, the United States *must* extradite the accused; second, if the offense is prosecutable only under the laws of one nation, extradition is discretionary. *Matter of Assarsson*, 635 F.2d at 1244 [emphasis in original].

In reaching this conclusion the court determined that the term "need not" was meant to confer discretion. *Id.* at 1245.

*Brouse v. United States*, 68 F.2d 294, 295 (1st Cir. 1933), *cited with approval in Jhirad v. Ferrandina*, 486 F.2d 442, 444 (2d Cir. 1973).

---

**3.** Some courts which have addressed the issue have stated the test in the alternative, with concealment being one possibility. *See e.g.*

 The United States does not generally prosecute citizens for crimes committed outside its borders. *Matter of Assarsson,* 635 F.2d at 1245 (citing *Schooner Exchange v. M'Fadden,* 11 U.S. 116, 7 Cranch 116 (1812)). However, the possibility of prosecution under the laws of both the requesting and requested state is not a prerequisite to extradition.

 The United States may surrender a fugitive to be prosecuted for acts which are not crimes under United States law if a treaty so allows. *Id.; Gallina v. Fraser,* 278 F.2d 77, 79 (2d Cir. 1960), *cert. denied,* 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960). Accordingly, under the reasoning of the Seventh Circuit, the United States has discretion to surrender Assarsson to Sweden for prosecution for the alleged arson, even though it was committed outside Sweden's jurisdiction.

Assarsson argues that *Valentine v. United States,* 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936), prohibits finding such discretion. In *Valentine* the court found that the phrase "neither of the contracting parties *shall be bound* [to surrender its citizens]" did not confer discretion to order extradition of United States citizens. *Id.* at 11–13, 57 S.Ct. at 103–104 [emphasis added]. In reaching this conclusion, it noted that a standard clause of treaties of the time explicitly conferred such discretion but was absent in the treaty before the court. *Id.* at 12–13, 57 S.Ct. at 104.

In contrast to the present case, *Valentine* concerned the extradition of United States citizens. For that reason, the court questioned whether there was a clear grant of discretion. *See e.g., id.* at 8 ("The surrender of its citizens by the Government of the United States must find its sanction in our law."). Because the current case involves the surrender of a foreign citizen, it may be supposed that a less exacting standard applies. Moreover, the phrase "need not" in the Treaty at issue here implies more discretion than the phrase "shall not be bound," used in the *Valentine* treaty.

Assarsson also argues that because both Article IV § 1 and Article VII of the Trea-

ty use the phrase "in its discretion," failure to use that explicit phrase in Article IV § 2 shows the drafters did not intend to confer discretion. This difference is not conclusive. The drafters of the Treaty knew how to use the term "shall" when they meant to forbid discretion. That term is found, for example, in Article II. Therefore, the inference is strong that failure to use the term "shall" was meant to grant discretion.

Finally, Assarsson argues that if discretion is granted in Article IV § 2, the provision of Article I which states that those charged or convicted outside of the territory of the requesting state are to be surrendered only subject to the conditions of Article IV would be read out of the Treaty, since in all cases there would be discretion to surrender persons for extraterritorial offenses. If that were the drafters' intent, he argues, Article I would merely have stated that there is discretion to extradite extraterritorial offenses, rather than referring to Article IV. The mere fact that the drafters chose to refer to Article IV does not support the conclusion Assarsson wishes the court to reach. The drafters obviously found it more convenient to refer to Article IV rather than set out its provisions in full in Article I.

## ORDER

Now therefore, based upon this court's *de novo* review of the objections to the Report and Recommendation of Magistrate J. Earl Cudd and all of the files, records, and proceedings herein, and the court finding itself in agreement with the conclusions reached by the Magistrate,

IT IS HEREBY ORDERED that Assarsson's petition for habeas corpus is denied.