**In the Matter of Extradition of Sven Ulf Ingemar ASSARSSON, Appellant.**

No. 82–1621.

United States Court of Appeals, Eighth Circuit.

Submitted July 14, 1982.

Decided Aug. 27, 1982.

Herbert J. Miller, Jr., David O. Stewart, Miller, Cassidy, Larroca & Lewin, Washington, D. C., Sheldon Davidson, Pedersen & Houpt, Chicago, Ill., David P. Schippers, Schippers & Mackay, Chicago, Ill., for appellant; Mark W. Peterson, Friedberg & Peterson, Minneapolis, Minn., of counsel.

Lawrence W. Chamblee, Catherine M. Volz, Trial Attys., Crim. Div., U. S. Dept. of Justice, Washington, D. C., for appellee.

Before LAY, Chief Judge, and HEANEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Sven Ulf Ingemar Assarsson appeals from a final order entered in the District Court[1] for the District of Minnesota denying his petition for writ of habeas corpus. For reversal appellant argues that (1) he has not been charged with an extraditable offense, (2) extradition is barred by the statute of limitations, and (3) he cannot be extradited for an extraterritorial offense. For the reasons discussed below, we affirm the district court's order denying habeas corpus relief.

The following facts are taken in part from the district court's order. *In re Extradition of Assarsson*, 538 F.Supp. 1055 (D.Minn.1982). Appellant is a citizen of Sweden. Sweden alleged that appellant is "suspected on good grounds" of complicity in a warehouse fire, believed to be arson, in Copenhagen, Denmark, on September 19, 1975, and in the filing of a fraudulent insurance claim in Malmö, Sweden, for the goods destroyed in the warehouse fire on October 3, 1975.[2] On November 3, 1977, the Malmö district court, acting upon the Malmö district attorney's application for arrest, found "good grounds" existed to suspect appellant of gross arson and attempted gross fraud. The Malmö district court did not order appellant's arrest but imposed certain travel restrictions and required appellant to report daily to the local police. The reporting requirement was subsequently modified to three times per week. Appellant last reported to the police on March 17, 1978. On March 28, 1978, the Malmö district court noted that appellant had violated the travel restrictions, reaffirmed that appellant was suspected on "good grounds" of gross arson and attempted gross fraud, and declared appellant arrested. On November 24, 1978, the Malmö district attorney filed a supplemental application for arrest in order to comply with the terms of the extradition treaty between the United States and Sweden. This application for arrest stated that appellant was then living with his brother Jan Assarsson in Illinois and contained a more detailed statement of the Swedish authorities' investigation into the Copenhagen fire and insurance claim. Appellant's passport was revoked in December 1978. On January 26, 1979, the Malmö district court held a supplemental hearing and on February 1, 1979, again found "good grounds" existed to suspect appellant of gross arson and attempted gross fraud. The court also noted appellant's violation of travel restrictions and continued absence from Sweden and declared appellant to be arrested.

On August 26, 1981, following a request through diplomatic channels, the United States Attorney for the District of Minnesota, acting on behalf of the government of Sweden, filed a verified extradition complaint with attached documentary evidence in federal district court. The complaint alleged that appellant was "duly and legally charged in Sweden with having committed the crimes of participation in gross arson

---

1. The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota.

2. For additional background information about the Copenhagen warehouse fire and insurance claim, see *Matter of Assarsson*, 635 F.2d 1237, 1238 (7th Cir. 1980) (extradition proceedings against appellant's brother Jan), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981).

and gross fraud," and sought his arrest and extradition under the Convention of Extradition between the United States of America and Sweden, 14 U.S.T. 1845, T.I.A.S. No. 5496 (1963). Pursuant to an arrest warrant issued that day, appellant was arrested and taken into federal custody.[3] On November 16, 1981, an extradition hearing was held before United States Magistrate J. Earl Cudd, a magistrate duly authorized to act in extradition matters. *See* 18 U.S.C. § 3184.[4] On December 31, 1981, Magistrate Cudd issued an order denying appellant's motion to dismiss and certifying appellant as extraditable.

Appellant sought review of the magistrate's decision by filing a petition for writ of habeas corpus in the district court. "Because a finding of extraditability is not subject to direct appeal, collateral review is possible only through a writ of habeas corpus." *Hooker v. Klein*, 573 F.2d 1360, 1364 (9th Cir.) (citations omitted), *cert. denied*, 439 U.S. 932, 99 S.Ct. 323, 58 L.Ed.2d 327 (1978). The district court referred the matter to Magistrate Cudd pursuant to 28 U.S.C. § 636, who recommended that the petition be denied. Appellant filed objections and, following a hearing, the district court denied the petition. This appeal followed.

The scope of review of an extradition order is considerably more restricted than that generally engaged in by an appellate court. On collateral review by habeas corpus, the Court is not permitted to inquire beyond whether (1) the extradition judge had jurisdiction to conduct extradition proceedings; (2) the extradition court had jurisdiction over the fugitive; (3) the treaty of extradition was in full force and effect; (4) the crime fell within terms of the treaty; and (5) there was competent legal evidence to support a finding of extraditability.

*Hooker v. Klein*, 573 F.2d at 1368, *citing Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925);[5] *see also Matter of Assarsson*, 635 F.2d 1237, 1240 (7th Cir. 1980) (extradition proceedings brought against Sven Assarsson's brother), *cert. denied*, 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981).

I. *Charge Requirement*

Appellant first argues that he has not been "charged" with an extraditable offense because the Swedish prosecuting authorities have not filed a formal document (called a "summons") for gross arson and attempted gross fraud against him. *See Matter of Assarsson*, 635 F.2d at 1239 n.3, *citing* Swedish Code of Judicial Procedure

---

**3.** Appellant's motions to be released on bail pending his extradition hearing were denied by the United States magistrate, the district court and this court.

**4.** 18 U.S.C. § 3184 provides:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging ·any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he

shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

**5.** As explained in *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925):

[The petition for writ of habeas corpus] is not a means for rehearing what the magistrate already has decided. The alleged fugitive from justice has had his hearing and *habeas corpus* is available only to inquire whether the magistrate has jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.

ch. 45, §§ 1, 4, 9 (A. Bruzelius trans. 1968). Appellant argues that at most he is subject to an arrest order and that no prosecution has been initiated.

■ The magistrate concluded that appellant had been "charged" with extraditable offenses within the meaning of the treaty; the district court determined that the magistrate's finding was not reviewable on habeas corpus, 538 F.Supp. at 1057, *citing Matter of Assarsson*, 635 F.2d at 1244. The district court alternatively concluded that appellant had been "charged" with an extraditable offense within the meaning of the treaty. 538 F.Supp. at 1058. Because we agree with the district court that the magistrate's determination is not within the scope of review on habeas corpus, we do not reach the merits of appellant's argument. *Matter of Assarsson*, 635 F.2d at 1239–43; *Garcia-Guillern v. United States*, 450 F.2d 1189, 1193 n.1 (5th Cir. 1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972). As explained by the Seventh Circuit in *Assarsson*

> *Fernandez* defines the scope of review. Under *Fernandez*, we may review only whether "the offense charged is within the treaty." We may therefore review only those conditions which preclude extradition for offenses which are otherwise extraditable. Any such conditions must come from the treaty itself....
>
> The existence of formal charges can be reviewable, then, only if the treaty itself conditions extradition for the offenses listed [which include arson and attempted fraud] in Article II on the existence of formal charges. The United States-Sweden treaty does not so condition extradition.
>
> ... The filing of formal charges is not stated anywhere as a prerequisite to extradition.... Because the treaty does not so limit the class of extraditable offenses, we may not review the magistrate's determination that Assarsson [, the brother of appellant herein,] was charged "under the terms of the treaty."

635 F.2d at 1241–42 (citations omitted).

■ Appellant argues that the question whether he has been charged with an extra-ditable offense within the meaning of the treaty is subject to review on habeas corpus because such an inquiry is relevant to the magistrate's jurisdiction. We must disagree. Appellant does not argue that the magistrate who certified his extradition was not authorized to conduct extradition hearings or that there was no personal jurisdiction. In the absence of such contentions there is no question as to the jurisdiction of the magistrate. *See Garcia-Guillern v. United States*, 450 F.2d at 1192, *citing Gallina v. Fraser*, 177 F.Supp. 856 (D.Conn. 1959), *aff'd*, 278 F.2d 77 (2d Cir.), *cert. denied*, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960).

■ Appellant also argues that the magistrate erroneously determined that he had been ordered arrested for gross arson and attempted gross fraud by the Malmö district court. Appellant argues that the order of arrest was for his violation of the travel restrictions and reporting requirements only and that that is not an extraditable offense within the meaning of the treaty. This argument has not been properly preserved for review because appellant raises this argument for the first time on appeal. We note, however, that the Swedish documentary evidence (in translation) indicates that Sweden is seeking appellant's extradition on charges of gross arson and attempted gross fraud and not for violation of the travel restrictions and reporting requirements.

## II. *Statute of Limitations*

Appellant next argues that extradition is barred by the statute of limitations. Appellant argues that he cannot be extradited because the condition set forth in Article V, ¶ 2 of the treaty has not been satisfied. Article V, ¶ 2 provides: "Extradition shall not be granted in any of the following circumstances: ... When the legal proceedings or the enforcement of the penalty for the offense has become barred by limitation according to the laws of either the requesting State or the requested State." Appellant concedes that the applicable

Swedish statute of limitations is twenty-five years (Appendix at 75), but argues that the applicable federal statute of limitations, 18 U.S.C. § 3282,[6] which establishes a five-year statute of limitations, has expired. Title 18 U.S.C. § 3290 provides that "[n]o statute of limitations shall extend to any person fleeing from justice," but appellant argues that he cannot be characterized as a fugitive after November 1978 because fugitive status requires concealment with the intent to avoid arrest or prosecution in addition to absence from the jurisdiction. *See, e.g., Caplan v. Vokes*, 649 F.2d 1336, 1340–42 (9th Cir. 1981); *Jhirad v. Ferrandina*, 486 F.2d 442, 444–45 (2d Cir. 1973). *But see King v. United States*, 144 F.2d 729 (8th Cir. 1944) (absence from jurisdiction only), *cert. denied*, 324 U.S. 854, 65 S.Ct. 711, 89 L.Ed. 1413 (1945); *McGowen v. United States*, 70 U.S.App.D.C. 268, 105 F.2d 791, *cert. denied*, 308 U.S. 552, 60 S.Ct. 98, 84 L.Ed. 464 (1939).

Appellant argues that by November 1978 he was living openly in Illinois with his brother Jan and had abandoned any intent to avoid arrest or prosecution. The Swedish authorities knew his Illinois address. Appellant argues that he could not have intended to conceal himself with the intent to avoid arrest or prosecution while living with his brother Jan because Sweden had begun extradition proceedings against Jan in May 1978, several months earlier. Appellant also argues that he moved openly to California in 1979 and later to Minnesota and even reported his new California address to the FBI office in Los Angeles.

According to appellant, his fugitive status lasted at most for eight months (from late March 1978 to late November 1978). Appellant thus calculates that the statutory period expired in June 1981, five years and eight months after the commission of the alleged crimes in October 1975. Appellant argues that because the Swedish authorities did not begin prosecution proceedings[7] against him before June 1981, the treaty barred his extradition.

Because Article V, ¶ 2 of the treaty requires compliance with the federal statute of limitations, the magistrate had to determine whether prosecution is barred by 18 U.S.C. § 3282 and the magistrate's decision is reviewable on habeas corpus. *See Matter of Assarsson*, 670 F.2d 722, 725 (7th Cir. 1982), *citing Caplan v. Vokes*, 649 F.2d at 1340, *and Freedman v. United States*, 437 F.Supp. 1252, 1264 (N.D.Ga.1977); *Brauch v. Raiche*, 618 F.2d 843, 847 (1st Cir. 1980). Here, the district court agreed with the magistrate's determination that appellant's departure from Sweden in March 1978 tolled the running of the statute of limitations.[8] 538 F.Supp. at 1059. The district court found that appellant was a fugitive for purposes of 18 U.S.C. § 3290 because he was absent from Sweden, the place of the offense. *Id., citing King v. United States*, 144 F.2d at 731. The district court also found that, under the intent test standard, appellant was a fugitive because he left Sweden with the intent to avoid arrest or prosecution. 538 F.Supp. at 1059. The district court inferred the requisite intent from proof that appellant knew he was

---

**6.** 18 U.S.C. § 3282 provides: "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed."

**7.** The Swedish authorities have not obtained a summons against appellant. Criminal prosecutions in Sweden begin with the filing of a "summons." Swedish Code of Judicial Procedure ch. 45, § 1 (A. Bruzelius trans. 1968), *cited in Matter of Assarsson*, 635 F.2d at 1239 n.3.

**8.** The government also argues that the running of the statute of limitations was tolled by the arrest order issued by the Malmö district court

in March 1978. The government argues that the arrest order is the functional equivalent of an indictment or information and that the return of an indictment or filing of an information tolls the running of the statute of limitations. *See United States v. Grady*, 544 F.2d 598, 601 (2d Cir. 1976); *Powell v. United States*, 122 U.S.App.D.C. 229, 352 F.2d 705, 707 n.5 (1965). Because we affirm the district court's finding that appellant's departure from Sweden tolled the running of the statute of limitations, we express no opinion as to the merits of this argument. We note, however, that arrest does not toll the running of the statute of limitations. *See Powell v. United States*, 122 U.S.App.D.C. 229, 352 F.2d at 707 n.5.

wanted by the authorities (he knew he was under investigation for gross arson and attempted gross fraud, was aware of the travel restrictions and reporting requirements imposed by the Malmö district court, and violated the court order) and failed to submit to arrest. *Id., citing United States v. Ballesteros-Cordova,* 586 F.2d 1321, 1323 (9th Cir. 1978) (per curiam), *and United States v. Wazney,* 529 F.2d 1287, 1289 (9th Cir. 1976).

■■ We agree with the district court's analysis. First, this Circuit follows the absence from the jurisdiction test of fugitive status; intent to avoid arrest or prosecution is not required. *See King v. United States,* 144 F.2d at 731. Appellant is a fugitive because he has left Sweden.[9] Second, even using an intent test, the government showed appellant left Sweden with the intent to avoid arrest or prosecution. *See Caplan v. Vokes,* 649 F.2d at 1341;[10] *Jhirad v. Ferrandina,* 536 F.2d 478, 482–84 (2d Cir.) (government must prove intent to avoid arrest or prosecution by preponderance of evidence), *cert. denied,* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). Third, although the concealment of one's identity or location is certainly probative evidence of the intent to avoid arrest or prosecution, we are not persuaded that concealment *per se* is necessary to infer the intent to avoid arrest or prosecution. For example, the accused in *Jhirad v. Ferrandina,* 536 F.2d at 482–83, openly left India to attend an international conference in Brussels, then traveled to Geneva and lived there openly for almost a year, then emigrated to Israel and later moved to the United States. *But cf. Caplan v. Vokes,* 649 F.2d at 1341 (openly leaving jurisdiction and moving from place to place found not to support inference that accused left jurisdiction because of possibility of criminal charges). Fourth, although the question of appellant's alleged abandonment of the intent to avoid arrest or prosecution at some point in 1978 or 1979 (he moved into his brother's house in Illinois in 1978 and allegedly informed the FBI of his location when he moved to California in 1979) is a troublesome one, we think the relevant inquiry is whether appellant left Sweden with the intent to avoid arrest or prosecution. *See Jhirad v. Ferrandina,* 536 F.2d at 483 (court's concern was with determining the reason for accused's absence from native country).

We cannot say that the magistrate's determination that appellant left Sweden with the intent to avoid arrest or prosecution was clearly erroneous or that the district court erred in accepting this finding. In sum, appellant's departure from Sweden in March 1978[11] tolled the running of the statute of limitations. By our calculations, approximately thirty months had elapsed by

**9.** In international extradition cases the fugitive is necessarily physically absent from the requesting jurisdiction.

Physical absence from the jurisdiction is not, however, essential to toll the statute of limitations under section 3290. It is enough that an accused leaves his usual place of abode and conceals himself for the purpose of avoiding arrest or prosecution. In modern large and heavily populated districts it is almost as easy to avoid arrest or prosecution by concealing oneself within the district as by fleeing the district.

*United States v. Wazney,* 529 F.2d 1287, 1289 (9th Cir. 1976) (citations omitted) (appellant argued evidence was insufficient to support a finding that he physically left territorial jurisdiction).

**10.** To a certain extent, *Caplan v. Vokes* is distinguishable on its facts from the present case. In *Caplan* the accused had been planning to leave England for several months prior to his departure; he and his wife had applied for

nonresidence classification with the British government several months prior to departure; the nonresidence application contained their new address; although an investigation of the accused's business affairs had begun, he never had notice that he was wanted for arrest or that criminal charges were contemplated. 649 F.2d at 1341. In comparison, appellant knew that the Swedish authorities were conducting a criminal investigation, that he was suspected of specific criminal offenses, and that he was subject to court-imposed travel restrictions and reporting requirements. Moreover, whether or not an accused left the requesting jurisdiction with the intent to avoid arrest or prosecution is a question of fact.

**11.** It does not matter that the Swedish authorities had not actually begun the prosecution by obtaining a summons, *see* note 7 *supra,* by March 1978. As noted by the Supreme Court in *Streep v. United States,* 160 U.S. 128, 133, 16 S.Ct. 244, 246, 40 L.Ed. 365 (1895) (predecessor statute to 18 U.S.C. § 3290),

that time (October 1975 to March 1978), leaving an additional thirty months remaining in the statutory period. Thus, appellant's extradition is not barred by the statute of limitations.

## III. *Extraterritoriality*

Appellant next argues that the Copenhagen arson is not an extraditable offense under the treaty. Appellant argues that Art. IV, ¶ 2 of the treaty authorizes extradition for extraterritorial offenses, that is, offenses committed outside the territorial jurisdiction of the requesting state, only if *both* the requesting state and the requested state could prosecute the accused for the extraterritorial offense under corresponding circumstances. Although Sweden does have the authority to prosecute appellant for an offense committed in Denmark,[12] the United States generally does not prosecute for extraterritorial offenses. *See The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 3 L.Ed. 287 (1812). For this reason appellant argues that the Copenhagen arson is not an extraditable offense under the treaty.

■ This argument was rejected by the district court, 538 F.Supp. at 1059–60, *citing Matter of Assarsson*, 635 F.2d at 1244–45. We find the Seventh Circuit's interpretation of the treaty to be persuasive:

> [i]n order to constitute a fleeing from justice, it is not necessary that the course of justice should have been put in operation by the presentment of an indictment by a grand jury, or by the filing of an information by the attorney for the government, or by the making of a complaint before a magistrate. It is sufficient that there is a flight with the intention of avoiding being prosecuted, whether a prosecution has or has not been actually begun.

12. The Penal Code of Sweden ch. 2, ¶ 2 provides in part: "For a crime which has been committed outside of Realm, judgment shall be given according to Swedish law, and in a Swedish court of law, if the crime has been committed ... by a Swedish citizen ...."

13. We think that the extraterritorial offense argument should be distinguished from the dual criminality argument. Act III, ¶ 1 of the treaty specifically requires dual criminality for extradition:

> The requested State shall ... extradite a person charged with or convicted of any of-

The treaty, in Article I, anticipates that some extraterritorial crimes are extraditable. Article I provides:

> Each Contracting State undertakes to surrender to the other ... those persons ... who have been charged with or convicted of ... offenses ... committed ... outside [the territorial jurisdiction of the other] under the conditions specified in Article IV ....

Article IV, [¶] 2 of the treaty defines the conditions:

> When the offense has been committed outside the territorial jurisdiction of the requesting State, the request for extradition need not be honored unless the laws of the requesting State and those of the requested State authorize prosecution of such offense under corresponding circumstances.

We read the language as governing extradition under two different sets of circumstances: first, if the extraterritorial offense charged is prosecutable under the laws of both countries, the United States *must* extradite the accused; second, if the offense is prosecutable only under the laws of one nation, extradition is discretionary.

... That the offense charged is not a crime in the United States is not necessarily a bar to extradition.[13] "[I]f the

> fense enumerated in Article II only when both of the following conditions exist:
> (a) The law of the requesting State, in force when the offense was committed, provides a possible penalty of deprivation of liberty for a period of more than one year, and
> (b) The law in force in the requested State generally provides a possible penalty of deprivation of liberty for a period of more than one year which would be applicable if the offense were committed in the territory of the requested State.

Cases involving consideration of the dual criminality requirement often refer to the substantive law of the asylum state, here Minnesota. *See Brauch v. Raiche*, 618 F.2d 843, 847–52 (1st Cir. 1980); *Shapiro v. Ferrandina*, 478 F.2d 894, 901 & n.4, 907–13 (2d Cir.), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). Arson is a crime in Minnesota. Minn.Stat.Ann. § 609.562 (West Supp.1982) (arson in second degree).

extradition treaty so provides, the United States may surrender a fugitive to be prosecuted for acts which are not crimes within the United States." *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir.), *cert. denied*, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960); *Factor v. Laubenheimer*, 290 U.S. 276, 290–91, 54 S.Ct. 191, 194, 78 L.Ed. 315 (1933). The treaty language therefore controls. The plain language of this treaty indicates that the executive has discretion to extradite for extraterritorial offenses. Were the treaty language here "shall not ... unless" we might agree that discretion to extradite was lacking. But "need not ... unless" connotes discretion.

*Id.* (footnote omitted, emphasis in original). The Seventh Circuit also rejected appellant's argument that in the absence of an express grant of authority in the treaty, the United States has no discretion to extradite for extraterritorial offenses, citing *Valentine v. United States ex rel. Neidecker*, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936). The Seventh Circuit distinguished the language used in the treaty at issue in *Valentine* and the language in the present case, concluding that "*Valentine* itself states that discretion to extradite may be granted by the terms of a treaty. The treaty here, by its language, grants discretion to extradite for extraterritorial offenses." 635 F.2d at 1245, *citing Valentine v. United States ex rel. Neidecker*, 299 U.S. at 11, 57 S.Ct. at 103. In view of our holding that Art. IV, ¶ 2 of the treaty grants the United States discretionary authority to extradite persons for extraterritorial offenses, we do not reach the government's argument that the United States could prosecute appellant for the Copenhagen arson under several federal criminal statutes.

Accordingly, the order of the district court is affirmed.